# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CoStar Realty Information, Inc., <br><br> Plaintiff, <br><br> v. <br><br> CIVIX-DDI, LLC. <br><br> Defendant. | Jury Trial Demanded |

## COSTAR REALTY INFORMATION, INC.'S DECLARATORY JUDGMENT COMPLAINT FOR NON-INFRINGEMENT AND INVALIDITY <u>AGAINST CIVIX-DDI, LLC and JURY DEMAND</u>

Plaintiff CoSTAR REALTY INFORMATION, INC., ("CoStar" or "Plaintiff"), for their Complaint against Defendant CIVIX-DDI, LLC, ("CIVIX" or "Defendant") , alleges as follows:

## NATURE OF THE ACTION

1. This is an action by CoStar against CIVIX pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, for a declaratory judgment of non-infringement and invalidity of United States Patent Nos. 6,385,622 ("the '622 Patent") (attached as **Exhibit A**) and 6,415,291 ("the '291 Patent") (attached as **Exhibit B**) (collectively, "the Asserted Patents") under the Patent Laws of the United States, 35 U.S.C. §§ 101, *et seq*.

## THE PARTIES

2. CoStar Realty Information, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices located at 1331 L Street N.W., Washington DC 20005.

3. On information and belief, CIVIX-DDI, LLC is a Colorado limited liability company having its principal place of business at 1220 Prince Street, Alexandria, Virginia 22314. At least as late as August 24, 2006, on information and belief, CIVIX's principal place of business was in this district, located at 125 South Wacker Drive, Suite 326, Chicago, Illinois, 60606.

## JURISDICTION AND VENUE

4. CoStar brings this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 for a declaratory judgment of non-infringement and invalidity of the Asserted Patents under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq*. Since this action arises under the Patent Laws of the United States, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. On information and belief, this Court has personal jurisdiction over CIVIX because CIVIX has constitutionally sufficient contacts with the Northern District of Illinois to make personal jurisdiction proper in this Court. In particular, on information and belief, CIVIX has repeatedly availed itself of the jurisdiction of this Court through the filing of lawsuits in this district. Indeed, one of the actions filed in this Court, is ongoing. *CIVIX-DDI, LLC v. Hotels.com, L.P., et al.*, N.D. Ill. Case No. 05-cv-06869. CIVIX has recently alleged that its principal place of business is located in Alexandria Virginia, but at least as late as August 24, 2006, on information and belief, CIVIX's principal place of business was in this district, located at 125 South Wacker Drive, Suite 326, Chicago, Illinois, 60606.

6. On June 22, 1999, CIVIX filed suit against Navigation Technologies Corporation in this district. *See CIVIX-DDI, LLC v. Navigation Technologies Corporation*, N.D. Ill. Case No. 99-cv-04140.

7. On June 3, 2003, CIVIX filed suit against Motorola, Inc., Verizon Wireless, Expedia, Inc., and Travelscape, Inc. in this district. *See CIVIX-DDI, LLC v. Motorola, Inc., et al.*, N.D. Ill. Case No. 03-cv-03792.

8. On December 13, 2003, CIVIX filed suit against Expedia, Inc. and Verizon Information Services in this district. *See CIVIX-DDI, LLC v. Expedia, Inc., et al.*, N.D. Ill. Case No. 04-cv-08031.

9. On December 6, 2005, CIVIX filed suit against the National Association of Realtors, Homestore Inc., Hotels.com, L.P., Hotels.com, GP LLC, Yahoo! Inc., Orbitz LLC, Travelocity.com Inc., and YellowPages.com LLC in this district. *See CIVIX-DDI, LLC v. Hotels.com, L.P., et al.*, N.D. Ill. Case No. 05-cv-06869. This case is currently pending in this Court.

10. On February 13, 2006, CIVIX filed suit against Orbitz LLC, Travelocity.com Inc., and YellowPages.com LLC in this district. *See CIVIX-DDI, LLC v. Ortbitz, LLC, et al.*, N.D. Ill. Case No. 06-cv-00796.

11. On August 4, 2010, CIVIX filed suit against Midwest Real Estate Data, LLC in this district. *See CIVIX-DDI, LLC v. Midwest Real Estate Data, LLC, et al.*, N.D. Ill. Case No. 10-cv-04887.

12. On information and belief, CIVIX has long been represented in litigation by the law firm of Niro, Haller, & Niro, Ltd. ("Niro"), which is located in this district at 181 West Madison Street, Suite 4600, Chicago, Illinois 60602-4515. Niro has represented CIVIX in all of the cases in this district identified above.

13. On July 18, 2011, CIVIX sent a letter to Jon Coleman, General Counsel of CoStar regarding the patents asserted in this action and products of CoStar. CoStar responded on September 9, 2011.

14. On September 16, 2011, CIVIX responded to CoStar's letter of September 9, 2011, stating that the following CoStar products infringe the '622 and '291 patents: CoStar

Property Professional, CoStar Property Professional Retain, CoStar Tenants, CoStar Comps Professional and Showcase. CIVIX's letter of September 16, 2011 is attached to this complaint as **Exhibit C**.

15. On January 3, 2012, CIVIX filed suit against LoopNet, Inc., in the Eastern District of Virginia. *See CIVIX-DDI, LLC v. LoopNet, Inc.*, E.D. Va. Case No. 12-cv-00002. On May 14, 2012, CIVIX filed a motion for leave to amend to file a first amended complaint adding CoStar Group, Inc. ("CoStar Group") as a defendant in that action. The complaint that CIVIX sought leave to file asserted that CoStar Group had infringed claims of the Asserted Patents. CIVIX's proposed first amended complaint is attached to this complaint as **Exhibit D**.

16. On June 21, 2012, the Court issued its memorandum order denying CIVIX's motion for leave to amend to add CoStar Group as a defendant. The Court's order denying CIVIX's motion to amend is attached to this complaint as **Exhibit E**.

17. Therefore, at the present time an actual, active, dispute, case, and controversy exists between CoStar, on the one hand, and CIVIX, on the other, as to the validity of the Asserted Patents and the infringement of those patents by CoStar. This controversy is of such immediacy and reality to warrant declaratory relief so that the parties may ascertain their rights and duties with respect to the Asserted Patents.

18. Accordingly, venue in the Northern District of Illinois is proper under 28 U.S.C. §§1391(b), 1400(b).

## COUNT ONE
### Declaratory Judgment of Non-infringement of the '622 Patent

19. CoStar incorporates by reference the allegations set forth in paragraphs 1 through 18 above, as though fully asserted herein.

20. CIVIX represents that it owns the Asserted Patents, and has asserted that certain acts by CoStar infringe the Asserted Patents.

21. CIVIX has alleged that CoStar's product infringes the '622 Patent. CoStar has not infringed and is not now infringing directly or indirectly, and has not induced or contributed to and is not now inducing or contributing to the infringement of, either literally or by application of the doctrine of equivalents, any claim of the '622 Patent.

22. CoStar seeks a declaratory judgment from this Court under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 declaring the '622 Patent to be not infringed by CoStar and granting CoStar all other declaratory relief to which it may be entitled.

## COUNT TWO

### Declaratory Judgment of Invalidity of the '622 Patent

23. CoStar incorporates by reference the allegations set forth in paragraphs 1 through 22 above, as though fully asserted herein.

24. On information and belief, and based on CoStar's ongoing investigation to date, the claims of the '622 Patent are invalid because they fail to comply with one or more requirements of the Patent Laws of the United States, including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

25. CoStar seeks a declaratory judgment from this Court under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 declaring the '622 Patent to be invalid and/or unenforceable for reasons including, but not limited to, failure to comply with one or more of 35 U.S.C. §§ 102, 103, and 112, and granting CoStar all other declaratory relief to which it may be entitled.

## COUNT THREE

### Declaratory Judgment of Non-infringement of the '291 Patent

26. CoStar incorporates by reference the allegations set forth in paragraphs 1 through 25 above, as though fully asserted herein.

27. CIVIX represents that it owns the Asserted Patents, and has asserted that certain acts by CoStar infringe the Asserted Patents.

28. CIVIX has alleged that CoStar's product infringes the '291 Patent. CoStar has not infringed and is not now infringing directly or indirectly, and has not induced or contributed to and is not now inducing or contributing to the infringement of, either literally or by application of the doctrine of equivalents, any claim of the '291Patent.

29. CoStar seeks a declaratory judgment from this Court under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 declaring the '291 Patent to be not infringed by CoStar and granting CoStar all other declaratory relief to which it may be entitled.

## COUNT FOUR

### Declaratory Judgment of Invalidity of the '291 Patent

30. CoStar incorporates by reference the allegations set forth in paragraphs 1 through 29 above, as though fully asserted herein.

31. On information and belief, and based on CoStar's ongoing investigation to date, the claims of the '291 Patent are invalid because they fail to comply with one or more requirements of the Patent Laws of the United States, including, but not limited to, 35 U.S.C. §§ 102, 103, and/or 112.

32. CoStar seeks a declaratory judgment from this Court under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 declaring the '291 Patent to be invalid and/or unenforceable for reasons including, but not limited to, failure to comply with one or more of 35

U.S.C. §§ 101, 102, 103, and 112, and granting CoStar all other declaratory relief to which it may be entitled.

## COUNT FIVE

### Declaratory Judgment of Unenforceability Due to Inequitable Conduct

33. CoStar incorporates by reference the allegations set forth in paragraphs 1 through 32 above, as though fully asserted herein.

34. The Patents-in-Suit are unenforceable because, among other things, the named inventors and prosecuting attorneys, each of whom has a duty of candor and good faith when dealing with the USPTO, breached their duties in the prosecution of the applications that led to the issuance of the Patents-in-Suit and during reexamination of the Patents-in-Suit by failing to properly disclose to the USPTO material information and by making false and misleading statements, with the specific intent to deceive the USPTO.

35. The prosecuting attorneys and named inventors associated with the filing and/or prosecution and re-examination of the Patents-in-Suit include, at least, the named inventors of the Patents-in-Suit, and prosecuting attorney Curtis Vock.

36. The Patents-in-Suit purport to be continuations of United States Patent Nos. 5,682,525 (the "'525 patent") and 6,408,307 (the "'307 patent").

37. CIVIX filed various lawsuits asserting the '525 patent in and around 1999. One action was filed in the Northern District of Illinois against Navigation Technologies Corporation ("NavTech"), while three other lawsuits were filed in the District of Colorado against Microsoft Corporation and twenty-four other defendants.

38. Prior to the NavTech litigation, NavTech sought to provoke an interference at the USPTO between itself and CIVIX by filing U.S. Patent Application No. 09/179,299 (the "Interference Application"). NavTech sought to be declared the first and true inventor of certain mapping technologies described in both the Interference Application and the '525 patent.

39. The prosecution histories of the Patents-in-Suit contain no written evidence that CIVIX, including Mr. Vock, informed the PTO about the NavTech litigation or the Interference Application.

40. Upon information and belief, CIVIX had the specific intent to deceive and/or mislead the USPTO by failing to disclose, or failing adequately to disclose, the NavTech litigation and the Interference Application to the USPTO during the prosecution of the Patents-in-Suit.

41. In CIVIX v. Microsoft Corp., 84 F. Supp. 2d 1132 (D. Colo. 2000), the United States District Court for the District of Colorado granted defendants' summary judgment motions on the issue of non-infringement of the '525 patent. The district court also construed terms in the '525 patent that are also present in the Patents-in-Suit.

42. The prosecution histories of the Patents-in-Suit contain no written evidence that CIVIX disclosed to the USPTO information about the Microsoft litigation. For instance, there is no written evidence that CIVIX informed the USPTO that the District of Colorado had construed terms in the '525 patent that are present in the Patents-in-Suit. In addition, CIVIX failed to disclosed the district court's order granting defendants' motion for summary judgment of non-infringement of the '525 patent. The Information Disclosure Statements ("IDS") provided by CIVIX in connection with the prosecution of the Patents-in-Suit fail to disclose the Microsoft litigation.

43. CIVIX has asserted in other lawsuits that Mr. Vock had oral conversations with the patent examiner regarding the Microsoft litigation. The written interview summaries of those conversations, however, do not make any mention of the Microsoft litigation.

44. CIVIX had an opportunity to enter a written record of the alleged discussions with the patent examiner into the prosecution history, but, upon information and belief, failed to do so.

45. Upon information and belief, CIVIX, including Mr. Vock, had the specific intent to deceive and/or mislead the USPTO by failing to disclose, or failing adequately to disclose, the Microsoft litigation to the USPTO during the prosecution of the Patents-in-Suit.

46. In or around June 1999, the defendants in the Microsoft litigation filed motions for summary judgment of patent invalidity regarding the '525 patent. Microsoft filed one such motion itself on November 5, 1999. Upon information and belief, that motion identified three prior art references that Microsoft alleged invalidated various claim of the '525 patent. CIVIX failed to identify any of the prior art on which Microsoft relied in its previous IDSs.

47. By June 1999, CIVIX had filed three different IDSs in connection with the prosecution of the '307 patent. The first IDS, submitted to the USPTO on November 10, 1997, disclosed one patent. The second IDS, submitted to the USPTO on March 9, 1998, disclosed 16 patents. The third IDS, submitted to the USPTO on June 1, 1999, disclosed six patents and four other documents.

48. Fifteen months after Microsoft filed its summary judgment motion of invalidity, CIVIX submitted its fourth IDS to the USPTO on February 8, 2001. Upon information and belief, CIVIX's fourth IDS included the prior art on which Microsoft relied, but in "a mountain of material," that included approximately 244 U.S. patents, 64 published patent applications, and 290 non-patent references.

49. On August 12, 2001, after receiving the above-described fourth IDS, the patent examiner reminded CIVIX that "[a]n applicant's duty of disclosure of material and information is not satisfied by presenting a patent examiner with 'a mountain of largely irrelevant [material] from which he is presumed to have been able . . . to have found the critical [material]. It ignores the real world conditions under which examiners work.'"

50. CIVIX's response to the August 12, 2001 office action did not assist the patent examiner in determining which patents, published applications, and non-patent references in its fourth IDS were most relevant to the prosecution of the '307 patent. In fact, CIVIX's response did not even specify the three references on which Microsoft relied to prove invalidity.

51. CIVIX has asserted in other lawsuits that Mr. Vock and Mr. Semple had oral conversations with the patent examiner regarding the prior art set forth in its fourth IDS. The written interview summaries of those conversations, however, do not make mention of the prior art set forth in the fourth IDS.

52. CIVIX had an opportunity to enter a written record of the alleged discussions with the patent examiner into the prosecution history, but, upon information and belief, failed to do so.

53. CIVIX submitted an IDS on January 17, 2002 in connection with the prosecution of the '291 patent. The IDS, like the fourth IDS submitted in connection with the prosecution of the '307 patent, contained approximately 600 references.

54. CIVIX did not submit an IDS in connection with the prosecution of the '622 patent.

55. Upon information and belief, CIVIX, including Mr. Vock, had the specific intent to deceive and/or mislead the USPTO during the prosecution of the Patents-in-Suit by (1) submitting an excessive number of largely irrelevant references to the patent examiner while

failing to identify which pieces of material were most relevant, or (2) submitting no IDS to the USPTO at all.

56. On September 20, 2006, a request for ex parte re-examination of the '622 patent was filed with the USPTO. On January 23, 2007, a request for ex parte re-examination of the '291 patent was filed with the USPTO. Both requests were granted. Upon information and belief, CIVIX made affirmative misrepresentations of, and/or failed to disclose, material information to the USPTO during re-examination of the Patents-in-Suit.

57. On January 21, 2009, CIVIX and its prosecution counsel submitted a declaration in connection with re-examination proceedings of the Patents-in-Suit to overcome a USPTO invalidity rejection (the "swear-behind declaration"). The swear-behind declaration purports to describe the circumstances surrounding the claimed invention so as to establish a priority date that antedates a dispositive prior art reference: U.S. Patent No. 4,482,535 ("Hershey"). The swear-behind declaration is signed by named inventors Mr. Semple and Mr. Bouve.

58. By submitting the swear-behind declaration with Mr. Bouve's signature, CIVIX represented to the USPTO that Mr. Bouve was competent to affirm and attest to the facts set forth in the declaration. The last two paragraphs of the declaration provide as follows:

59. All statement [sic] made herein of our personal knowledge are true and all statements on information and belief are believed to be true.

> We make the above statements with the knowledge that under 18 U.S.C. § 1001, willful false statements and the like, so made, are punishable by fine or imprisonment, or both, and that such willful false statements may jeopardize the validity of any associated patent application or patent issued thereon.

60. Upon information and belief, CIVIX knew that Mr. Bouve had suffered at least two strokes, one in 1995 and one in 2002. CIVIX also knew that by 2007, Mr. Bouve had

suffered substantial memory loss and had difficulty speaking intelligibly. Further, CIVIX litigation counsel, in connection with another CIVIX lawsuit involving the Patents-in-Suit, informed the defendants' counsel in that litigation that because of Mr. Bouve's health problems, he was unfit for deposition.

61.  The swear-behind declaration fails to note or otherwise make mention of any competence or capacity issues affecting Mr. Bouve or his recollection of the events related to the invention.

62.  Upon information and belief, on March 16, 2009, counsel for Yahoo!, one of the defendants unable to depose Mr. Bouve, informed CIVIX's re-examination counsel of Mr. Bouve's health history and memory impairment.

63.  The prosecution history of the re-examinations of the Patents-in-Suit reveal no written evidence that CIVIX informed the USPTO of the unreliability of Mr. Bouve's declaration or made any effort to withdraw the swear-behind declaration.

64.  Upon information and belief, CIVIX knew that the swear-behind declaration was material to the USPTO because the declaration was provided in response to the patent examiner's rejection of the claims as invalid in view of prior art and following an interview with the patent examiner during which the appropriateness and relevance of such a declaration was allegedly discussed. Information concerning Mr. Bouve's health history and memory impairment was material to the USPTO's determination of patentability because a reasonable examiner would consider it important in deciding whether to allow the claims to survive re-examination, and because false declarations are inherently material.

65.  CIVIX submitted a supplemental declaration, attesting to essentially the same facts as the swear-behind declaration, dated May 8, 2009, signed only by Mr. Semple.

66. Upon information and belief, CIVIX had the specific intent to deceive and/or mislead the USPTO during the re-examination of the Patents-in-Suit when it failed to disclose Mr. Bouve's health history, memory impairment, and diminished capacity to the USPTO and sought to disguise that wrongdoing by later submitting a nearly identical declaration without his signature.

67. On January 21, 2009, and again in connection with the re-examination proceedings of the Patents-in-Suit, Mr. Semple submitted a declaration in his individual capacity, but on behalf of CIVIX, to set forth his "intent and understanding as an inventor and person of ordinary skill in the relevant art . . . concerning the meaning and use of the capitalized version of 'Internet' versus the non-capitalized version, 'internet'" at the alleged time of conception.

68. According to Mr. Semple's declaration, those two terms were used interchangeably at the time he claimed to have invented the subject-matter claimed in the patent.

> In the early 1990s, including 1994, as the Internet was becoming more well known, it was common to use the two different versions (capitalized/non-capitalized) of the "internet" interchangeably when making reference to the publicly accessible, global interconnection of computer networks which is today more consistently referred to as using the capitalized version, "the Internet." This is not only my opinion as an inventor and person of ordinary skill in the art, but is also consistent with and supported in literature from that period[.]

69. This position is directly at odds with the positions CIVIX advanced during claim construction in its litigations against such companies like Expedia, Inc. and Hotels.com. In the Expedia litigation, CIVIX argued during claim construction that a distinction existed between the two terms:

> The parties agree that the Court should construe "internet" as "a group of networks that have been connected by means of a common communications protocol." The Court will adopt this

> construction. The parties disagree, however, on the construction of the term "Internet." In its briefing, CIVIX argues that a distinction exists between "internet" and "Internet." . . . Defendants, however, argue that both "internet" and "Internet" have the same construction.

70. The court ultimately agreed with CIVIX, and construed the terms differently. Relying in part on a 1994 book that Mr. Semple also cited in his "Internet declaration," the court construed "Internet" to mean "a system of linked computer networks, worldwide in scope, that typically is associated with using TCP/IP as a standard protocol," and "internet" to mean "a group of networks that have been connected by means of a common communications protocol."

71. In the Hotels.com litigation, CIVIX again argued for a distinction between the terms "Internet" and "internet," but the court ultimately disagreed with CIVIX.

> [Hotels.com] contend[s] that "Internet" and "internet" have the same meaning in the '622 and '291 patents. [citation omitted]. Civix does not take an explicit stance on the issue, but appears to implicitly opposed [Hotels.com]'s position. [citations omitted]. The Court agrees with [Hotels.com] and thus declines to adhere to its earlier determination that the two terms carry different meanings.

72. Upon information and belief, in a letter dated March 16, 2009, counsel for defendant Yahoo! notified CIVIX's re-examination counsel that the position CIVIX advanced to the USPTO regarding the construction of capitalized "Internet" and non-capitalized "internet" was the opposite of the construction CIVIX asserted in the Expedia and Hotels.com lawsuits. There is no evidence that CIVIX identified this inconsistency to the USPTO or made any effort to withdraw Mr. Semple's Internet declaration.

73. Upon information and belief, CIVIX knew that Mr. Semple's Internet declaration was material to the USPTO because it was submitted after its claims had been rejected for invalidity in view of prior art that disclosed "Internet" references. Moreover, CIVIX's litigation

position was material to the USPTO's determination of patentability because a reasonable patent examiner would consider it important in deciding whether to allow the claims to survive re-examination because of the obvious inconsistency.

74. Upon information and belief, CIVIX had the specific intent to deceive and/or mislead the USPTO during the re-examination proceedings of the Patents-in-Suit when it took a position before the USPTO wholly contrary with its positions in lawsuits and failed to notify the USPTO of this inconsistency.

75. By engaging in at least the foregoing acts of misrepresentations, omissions, and deceit, CIVIX breached its duty of disclosure and engaged in inequitable conduct.

76. To resolve the legal and factual questions raised by CIVIX, and to afford relief from the uncertainty and controversy raised by CIVIX's allegations in its Complaint, CoStar is entitled to a declaratory judgment that the Patents-in-Suit are unenforceable by reason of inequitable conduct.

**PRAYER FOR RELIEF**

CoStar requests that the Court find in its favor and against CIVIX and that the Court grant the following relief:

1. The Court enter judgment declaring that CoStar has not willfully or otherwise infringed, contributed to the infringement of, nor induced infringement of any claim of the Asserted Patents;

2. The Court enter judgment declaring that the claims contained in the Asserted Patents are invalid and/or unenforceable;

3. The Court issue a declaration that this case is "exceptional" under 35 U.S.C. § 285;

4. The Court award CoStar its costs and expenses for this action, including

reasonable attorneys' fees;

5. The Court award to CoStar further necessary and proper relief under 28 U.S.C. § 2202; and

6. The Court grant to CoStar such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

In the above-captioned action, CoStar hereby demands a trial by jury as to all issues in this action triable by jury.

Respectfully submitted,

Dated: June 21, 2012

*/s/ David C. Van Dyke*
David C. Van Dyke

David C. Van Dyke
Howard & Howard LLP
200 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 456-3641
Facsimile: (312) 939-5617
Email: dvd@h2law.com

*Attorney for CoStar Realty Information, Inc.*