IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COSTAR REALTY INFORMATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 4968 |
| | ) | |
| CIVIX-DDI, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————————— | ) | |
| | ) | |
| CIVIX-DDI, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 7091 |
| v. | ) | |
| | ) | |
| LOOPNET, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————————— | ) | |
| | ) | |
| CIVIX-DDI, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 8632 |
| v. | ) | |
| | ) | |
| LOOPNET, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM ORDER AND OPINION

JAMES F. HOLDERMAN, Chief Judge:

These three consolidated patent cases involve allegations of patent infringement by patent

holder CIVIX-DDI, LLC ("CIVIX") against CoStar Realty Information, Inc. ("CoStar") and

1

LoopNet, Inc. ("LoopNet"). In 12 C 4968, CIVIX alleges that CoStar has infringed three of its patents, U.S. Patent No. 6,385,622 ("the '622 Patent"), U.S. Patent No. 6,415,291 ("the '291 Patent"), and 8,296,335 ("the '335 Patent"). (Dkt. No. 108 ("CIVIX's Countercl.").) CoStar alleges that the '622 Patent, the '291 Patent, and the '335 Patent are all unenforceable because of inequitable conduct. (Dkt. No. 99 ("CoStar's Third Am. Compl.").) Similarly, in 12 C 8632, CIVIX alleges that LoopNet infringed the '335 Patent. (12 C 8632, Dkt. No. 1 ("CIVIX's Compl.").) In response, LoopNet alleges that the '335 Patent is unenforceable because of inequitable conduct. (12 C 8632, Dkt. No. 71 ("Loopnet's Second Am. Countercl.").)

CIVIX has now moved to dismiss both CoStar's (Dkt. No. 109) and LoopNet's (Dkt. No. 112) allegations that its patents are unenforceable. CIVIX's motion to dismiss against LoopNet also seeks to strike LoopNet's Sixth Affirmative Defense, which also alleges inequitable conduct. (Dkt. No. 112.) Because the allegations of inequitable conduct are substantively identical in each case, the court will address the two motions to dismiss together. For the reasons explained below, CIVIX's motions to dismiss are each granted in part and denied in part.

FACTUAL BACKGROUND

CIVIX is the owner of the '622 and '291 Patents, both of which claim methods to locate points of interest in a particular geographical region by accessing a database from a remote location, and of the '335 Patent, which claims methods for using the Internet to provide a user of such a database advertising information related to the requested geographic region or item of interest. (*See* Dkt. No. 99, Exs. A, B, & F.)

CoStar's allegations regarding inequitable conduct are substantively identical to LoopNet's allegations regarding inequitable conduct.[1] For ease of reference, the following factual summary refers only to CoStar's Third Amended Complaint (Dkt. No. 99), the allegations of which the court accepts as true for purposes of these motions to dismiss.[2]

I.      Alleged Inequitable Conduct in Prosecution of '622 and '291 Patents

Both the '622 and '291 Patents were filed on March 23, 2001, as continuations of United States Patent Nos. 5,682,525 ("the '525 Patent") and 6,408,307 ("the '307 Patent). (CoStar's Third Am. Compl. ¶ 68; *see also id.* Exs. A-B.) The '622 Patent issued on May 7, 2002 (*Id.* Ex. A), and the '291 Patent issued on July 2, 2002 (*Id.* Ex. B). The inventors of the '622 Patent and the '291 Patent are W. Lincoln Bouve, William T. Semple, and Steven W. Oxman.

CoStar alleges that the prosecution histories for the '622 and '291 Patents indicate that CIVIX failed to inform the PTO of certain prior proceedings involving the '525 and '307 Patents. The proceedings that CoStar alleges were omitted include a lawsuit against Navigation Technologies Corporation ("NavTech") in the Northern District of Illinois for infringement of the '525 Patent (*Id.* ¶ 69), an interference application filed by NavTech before the PTO seeking to be declared the first inventor of the technology claimed in the '525 Patent (*Id.* ¶ 70), and a lawsuit

---

[1] Paragraphs 107-38 of CoStar's Third Amended Complaint (Dkt. No. 99) are substantively identical to ¶¶ 31-62 of LoopNet's Second Amended Answer and Counterclaims (12 C 8632, Dkt. No. 71). In addition, ¶ 31 of LoopNet's Second Amended Answer and Counterclaims (12 C 8632, Dkt. No. 71) incorporates by reference ¶¶ 43-84 of LoopNet's Second Amended Answer and Counterclaims in 12 C 7091 (12 C 7091, Dkt. No. 138), which are substantively identical to ¶¶ 65-105 of CoStar's Third Amended Complaint (Dkt. No. 99).

[2] Throughout this opinion, references to "CoStar" and "CoStar's allegations" refer also to "LoopNet" and "LoopNet's allegations."

against Microsoft Corp. in the District of Colorado[3] for infringement of the '525 Patent (*Id.* ¶¶ 73-74). CoStar alleges, in particular, that CIVIX failed to disclose to the PTO that the court in the *Microsoft* litigation construed terms in the '525 Patent that are also in the '622 and '291 Patents, and granted summary judgment of non-infringement of the '525 Patent. (*Id.* ¶ 74.) CoStar alleges that CIVIX had the "specific intent" to deceive the PTO by failing to disclose the above information. (*Id.* ¶¶ 72, 77.)

On November 5, 1999, Microsoft moved for summary judgment that the '525 Patent was invalid in the *Microsoft* litigation on the basis of three prior art references. (*Id.* ¶ 78.) At the time, CIVIX's application for the '307 Patent was pending.[4] CIVIX's '307 Patent application included three prior Information Disclosure Statements ("IDSs"), but none of those three IDSs included any of the prior art that Microsoft contended invalidated the '525 Patent. (*Id.* ¶¶ 78-79.) Fifteen months after Microsoft's motion for summary judgment of invalidity, CIVIX filed a fourth IDS as part of its application for the '307 Patent. (*Id.* ¶ 80.) The fourth IDS referred to the prior art on which Microsoft relied, but did so in the middle of "a mountain of material," including 244 patents, 64 patent applications, and 290 non-patent references. (*Id.*) The PTO requested that CIVIX identify the most relevant material among those references, but CIVIX failed to identify the three references on which Microsoft relied in its invalidity argument. (*Id.* ¶¶ 81-82.)

The IDS CIVIX submitted on January 17, 2002, as part of its prosecution of the '291 Patent included approximately 600 references. (*Id.* ¶ 85.) CIVIX did not, however, submit an IDS as part

---

[3] *See CIVIX v. Microsoft Corp.*, 84 F. Supp. 2d 1132 (D. Colo. 2000).

[4] The '307 Patent application was filed on August 28, 1997, and the '307 Patent issued on June 18, 2002.

of its prosecution of the '622 Patent. (*Id.* ¶ 86.) CoStar alleges that CIVIX's decisions to submit an excessive number of references and not to submit any IDS, respectively, were driven by the specific intent to deceive and mislead the PTO. (*Id.* ¶ 87.)

CoStar alleges that CIVIX's deceit continued during the reexaminations of the '622 and '291 Patents. During those processes, on January 21, 2009, CIVIX submitted a declaration signed by Bouve and Semple "describ[ing] the circumstances surrounding the claimed invention so as to establish a priority date that antedates a dispositive prior art reference" (the "Bouve Declaration"). (*Id.* ¶ 89.) Prior to submitting the Bouve declaration, however, Bouve had suffered at least two strokes, had substantial memory loss, and had difficulty speaking intelligibly. (*Id.* ¶ 91.) Although CIVIX's counsel were aware of Bouve's condition because they had previously stated that he was unfit for depositions because of his health problems, the Bouve Declaration did not disclose Bouve's health issues. (*Id.* ¶¶ 91-92.) Moreover, despite other counsel bringing the matter to its attention, CIVIX never informed the PTO of the unreliability of the Bouve Declaration. (*Id.* ¶¶ 93-94.) Nonetheless, CIVIX submitted a supplemental declaration by Semple, attesting to essentially the same facts as the Bouve Declaration, on May 8, 2009. (*Id.* ¶ 96.) CoStar alleges that CIVIX had the specific intent to deceive the PTO by failing to disclose Bouve's health issues, that CIVIX concealed its wrongdoing by submitting a later declaration without Bouve's signature, and that the PTO would have found the information important in deciding whether the '622 and '291 Patents survived reexamination. (*Id.* ¶¶ 95, 97.)

On January 21, 2009, Semple submitted another declaration on behalf of CIVIX as part of the reexamination proceedings for the '622 and '291 Patents explaining his understanding that the terms "Internet" and "internet" had the same meaning at the time of the invention. (*Id.* ¶¶ 98-99.)

That declaration contradicted CIVIX's position during claim construction of the '622 and '291 Patents in other litigation, during which CIVIX had argued that there were differences between the two terms. (*Id.*¶¶ 100-04.) CoStar alleges that CIVIX had the specific intent to deceive the PTO when it submitted Semple's declaration contradicting CIVIX's litigation position, and failed to disclose the inconsistency. (*Id.* ¶ 105.)

II.     Alleged Inequitable Conduct in Prosecution of '335 Patent

The '335 Patent is a continuation of the '291 Patent. (*Id.* ¶ 107.) CoStar alleges that the '335 Patent is "not sufficiently distinct" from the '291 Patent to avoid unenforceability because of the '291 Patent's unenforceability. (*Id.*) CoStar also alleges several other reasons for the '335 Patent's enforceability. First, CoStar alleges that CIVIX submitted three IDSs during prosecution of the '335 Patent that included an excessive number of documents. (*Id.* ¶ 109 (31-page IDS including 245 U.S. patents, 63 foreign documents, and 270 non-patent documents); *id.* ¶ 112 (IDS listing 36 U.S. patents and 109 non-patent documents); *id.* ¶ 113 (50-page IDS listing more than 580 U.S. patents and non-patent documents). In response, the patent examiner asked CIVIX to identify relevant references and highlight relevant sections within those references. (*Id.* ¶¶ 110-11, 114.) CIVIX attempted to comply by designating 120 documents that "may be relevant with respect to advertising," but the examiner found that designation insufficient. (*Id.* ¶¶ 115-17.)

CIVIX then submitted a declaration by Semple identifying just 34 of the disclosed references. (*Id.* ¶ 118.) CoStar alleges that the list of 34 references failed to identify other references from the IDSs that were relevant to the asserted claims of the '335 Patent, which relates to "advertising over the Internet." (*Id.* ¶¶ 119, 126.)[5] In addition, the 34 references were allegedly

---

[5] The Third Amended Complaint lists, in particular, "'A Practical Guide to Sabre

"cherry-picked" to include only references to the Internet that post-dated CIVIX's purported conception date, so that CIVIX could "swear behind" those references if the examiner used them to support the obviousness of the use of the Internet. (*Id.* ¶ 121.)[6]

CoStar alleges that although CIVIX knew that the omitted references were relevant, and that the obviousness of the Internet was important to the examiner, CIVIX omitted the references with an intent to deceive the PTO. (*Id.* ¶¶ 122-24, 127, 131.) In particular, the Third Amended

---

Reservations and Ticketing' (1992) by Jeanne Semer-Purzycki; 'The Official Guide to the Prodigy Service' (1991) by John L. Viescas; 'Format Quick Reference Guide'; and the transcript of the 'Galileo Deposition' and related exhibits." (*Id.* ¶ 119.)

[6] According to CoStar's Third Amended Complaint, the references in the IDSs that were not listed by Semple in his declaration, but that refer to the Internet include

> "CompuServe Extends Information Superhighway with Enhanced Internet Access," (March 11, 1994) by Gary Steiner; "CompuServe Access." (March 11, 1994) by Berry Wheeler; "CompuServe Subscribers to Have R.C.S. Access," (March 13, 1994) by Ed Jackson; "Access to CompuServe from the Internet Available Now," PR Newswire (March 31, 1994); "CompuServe, Dow Plug Into Internet," MacWeek, Volume 8, No. 12 (March 21, 1994) by Nathalie Welch; "Microfile - CompuServe's New Services," The Guardian, (March 24, 1994) by Jack Schofield).

(*Id.* ¶ 121.) CoStar's Third Amended Complaint also alleges that Semple failed to identify references in the IDSs that "were relevant in teaching the use of the Internet-like networking systems generally," including:

> "A Practical Guide to Sabre Reservations and Ticketing" (1992) by Jeanne Semer-Purzycki; "The Official Guide to the Prodigy Service" (1991) by John L. Viescas; "Format Quick Reference Guide"; "Rules and Reservations - Airline Computer Reservation Systems", Airline Business (August 1, 1993); "Learning Apollo - Basic and Advanced Training," Delmar Publishing (1994), by Talula Gunter; MAPBASE User Manual, Nextbase Limited, (1992–1993); and "Searching Dialog: The Complete Guide," Dialog Information Services (August 1987).

(*Id.* ¶ 125.)

Complaint alleges that CIVIX argued to the PTO that none of the cited references suggested use of the Internet (*Id.* ¶ 127), indicating that it knew of the materiality of the Internet references.

Finally, CoStar alleges that during prosecution of the '335 Patent CIVIX alternately argued that the terms "Internet" and "internet" were similar and that they were different, depending on the situation. (*Id.* ¶¶ 132-37.)

<u>ANALYSIS</u>

Under the Federal Rules of Civil Procedure, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Establishing a claim of inequitable conduct requires a party to show "that information material to patentability was withheld from the PTO, or material misinformation was provided to the PTO, with the intent to deceive or mislead the patent examiner into granting the patent." *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1290 (Fed. Cir. 2012). The Federal Circuit en banc recently clarified, contrary to prior law, that "the materiality required to establish inequitable conduct is but-for materiality," meaning that the PTO would not have

allowed a claim if it had been aware of the withheld information. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) (en banc). For example, "[w]hen an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* The party asserting inequitable conduct must show that the patentee possessed the relevant conditions of mind, including "(1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).

It has long been the law that to plead a claim for inequitable conduct, a plaintiff's allegations must comport with Rule 9(b), which "requires that the pleadings contain explicit rather than implied expression of the circumstances constituting fraud." *Id.* (quoting *King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 1010 (C.C.P.A. 1981)). In particular, the Federal Circuit has held that "Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission" to the PTO. *Id.* Rule 9(b) allows "[m]alice, intent, knowledge, and other conditions of a person's mind" to be alleged generally, Fed. R. Civ. P. 9(b), but the pleadings must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen*, 575 F.3d at 1327.

I.  '622 and '291 Patents

CoStar alleges that the '622 and '291 Patents are unenforceable due to inequitable conduct because of four of CIVIX's actions during prosecution and reexamination of those patents: (1) CIVIX's failure to disclose prior parent patent lawsuits involving the subject matter of the '622 and '291 Patents; (2) CIVIX's failure to disclose Bouve's failing health when it submitted the

Bouve Declaration; (3) CIVIX's representations to the PTO that the terms "Internet" and "internet" were identical, contrary to arguments in previous litigation; and (4) CIVIX's "burying" of relevant references. The court will address each of the alleged actions in turn.

A.       Prior Parent Patent Lawsuits

The court will first consider whether CoStar's allegations regarding CIVIX's failure to disclose the lawsuits involving the '525 Patent are sufficient to state a claim for inequitable conduct in the prosecution of the '622 and '291 Patents. The Manual of Patent Examining Procedure ("MPEP") provides that parties must disclose prior litigation involving the subject matter of a patent application:

> Where the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the U.S. Patent and Trademark Office. Examples of such material information include evidence of possible prior public use or sales, questions of inventorship, prior art, allegations of "fraud," "inequitable conduct," and "violation of duty of disclosure."

MPEP § 2001.06(c) (8th ed. rev. 2012).

The courts are "not bound by the definition of materiality in PTO rules." *Therasense*, 649 F.3d at 1294. Nevertheless, prior to the Federal Circuit's decision in *Therasense*, courts generally assumed that litigation involving the subjects listed in MPEP § 2001.06(c) was material to a related pending patent application. *See, e.g.*, *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1258 (Fed. Cir. 1997) ("According to the Manual of Patent Examining Procedure, relevant litigation includes the defenses raised against validity of the patent, or charges of fraud or inequitable conduct in litigation, which would normally be material to the reissue application."). Following *Therasense*, however, materiality requires that the PTO would not have issued the patent if it had known of the undisclosed litigation. *See Therasense*, 649 F.3d at 1292

("Because inequitable conduct renders an entire patent (or even a patent family) unenforceable, as a general rule, this doctrine should only be applied in instances where the patentee's misconduct resulted in the unfair benefit of receiving an unwarranted claim. After all, the patentee obtains no advantage from misconduct if the patent would have issued anyway." (citation omitted)).

CoStar contends that the *Therasense* standard does not apply to parent patent litigation, and that the nondisclosure of parent patent litigation is sufficient to constitute inequitable conduct if the parent patent litigation is merely relevant in some way to the patent application. (Dkt. No. 132, at 12.) In support, CoStar cites *Outside the Box*, a Federal Circuit case in which the parent patent litigation dealt only with infringement, and did not involve any issues related to patentability, enforceability, or validity. *Outside the Box*, 695 F.3d at 1290-91. The Federal Circuit held that nondisclosure of the parent patent litigation did not constitute inequitable conduct sufficient to make the patent unenforceable. *Id.* As the Federal Circuit explained,

> However, the issue was not whether the [prior] litigation was irrelevant; the issue was whether the existence of the [prior] litigation was material to patentability of the [patent-in-suit], when there was no citation of prior art, nor any pleading of invalidity or unpatentability in the [prior-litigation] complaint as it existed during pendency of the [patent-in-suit] application.

*Id.* at 1291. In other words, the prior litigation would not have been material even under the standards applicable prior to *Therasense*, because it did not deal with patentability, enforceability, or validity. The holding of *Outside the Box* thus did not directly address whether *Therasense*'s but-for materiality standard applies to assertions of inequitable conduct based on parent patent litigation.

*Outside the Box* did, however, cite *Therasense*'s new materiality requirement during its discussion of the materiality of the parent patent litigation. *Id.* Moreover, the language in

11

*Therasense* is unequivocal and categorical. *Therasense*, 649 F.3d at 1291 ("This court holds that, *as a general matter*, the materiality required to establish inequitable conduct is but-for materiality." (emphasis added)). CoStar presents no argument to overcome these considerations, so the court will apply *Therasense*'s materiality standard to CoStar's allegations of inequitable conduct based on parent patent litigation.

At the pleading stage, *Twombly* establishes that pleading legal conclusions is insufficient. *Twombly*, 550 U.S. at 555. To sufficiently plead but-for materiality under *Therasense*, therefore, "the accused infringer must identify some fact that would make it plausible that the PTO would not have granted the patent but-for the misrepresentation." *Human Genome Sciences, Inc. v. Genentech, Inc.*, No. 11-CV-6519, 2011 WL 7461786, at *4 (C.D. Cal. Dec. 9, 2011); *accord SAP Am., Inc. v. Purple Leaf, LLC*, No. C 11-4601, 2012 WL 2237995, at *6 (N.D. Cal. June 15, 2012) ("[I]t is not enough to simply allege—as a legal conclusion—that the information was material—rather, there must be facts alleged supporting that element.").

Here, CoStar fails to meet that requirement. With respect to materiality, CoStar's Third Amended Complaint alleges that "[t]he district court [in the *Microsoft* litigation] construed terms in the '525 Patent that are also present in the '622 and '291 Patents." (CoStar's Third Am. Compl. ¶ 73.) CoStar's Third Amended Complaint includes no explanation, however, of which terms in the '525 Patent the court construed, or of how the court's construction of those terms relates to the PTO's decision to issue the '622 and '291 Patents. That omission is fatal in light of *Exergen*'s requirement that the pleadings "explain both 'why' the withheld information is material and . . . 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329-30.

12

CoStar's Third Amended Complaint also alleges that CIVIX failed to disclose to the PTO the three prior art references Microsoft relied on in its November 5, 1999, motion for summary judgment of invalidity. (CoStar's Third Am. Compl. ¶ 78.) With respect to materiality, CoStar alleges only that Microsoft alleged those references "invalidated various claim [sic] of the '525 Patent." (*Id.*) Again, that allegation lacks the specificity necessary under Rule 9(b) and *Exergen* to explain how the undisclosed information is material. The allegation that an interested litigant said so is not sufficient, as interested litigants frequently take positions that have no substantive merit.[7] CoStar's Third Amended Complaint provides no detail about which claims are allegedly invalidated, why they would be invalidated by Microsoft's references, and how the PTO would have used the information to assess the patentability of the '291 or '622 Patents. With no other allegations regarding materiality, CoStar's allegations about CIVIX's failure to disclose the parent patent lawsuits are inadequate to state a claim for inequitable conduct.

B.     Bouve Declaration

CoStar's allegations regarding the Bouve Declaration are similarly inadequate to state a claim for inequitable conduct in the prosecution of the '622 and '291 Patents. Once again, CIVIX contends that CoStar's allegations fail to establish but-for materiality under the *Therasense* standard, because CoStar, aside from mere conclusory allegations, has "failed to plead facts sufficient to show that the PTO would not have granted" the patents if the PTO had been aware of Bouve's health problems. (Dkt. No. 110, at 10.)

---

[7] Microsoft's summary judgment of invalidity motion was mooted when the court granted Microsoft summary judgment of non-infringement, so the Colorado court never expressed an opinion on the merits of Microsoft's invalidity argument. *See* Dkt. No. 295, *CIVIX-DDI, LLC v. Microsoft Corp.*, No. 99-cv-172 (D. Colo. Feb. 23, 2000).

The court agrees. CoStar merely alleges that Bouve's health problems were material "because a reasonable examiner would consider it important" in deciding whether to issue the patents. (CoStar's Third Am. Compl. ¶ 95.) But that allegation merely states a conclusion of law, and the wrong conclusion of law at that, now that the Federal Circuit requires but-for materiality.

Even aside from the lack of allegations showing materiality, the court's "judicial experience and common sense," *Iqbal*, 556 U.S. at 679, suggest that CoStar's allegations of materiality are implausible. The Bouve Declaration, which deals with events surrounding the invention of the patented methods, was signed by both Bouve and Semple, two of the inventors. Even if Bouve's credibility were discounted because of his strokes and memory problems, Semple's credibility would still support the contents of the Bouve Declaration. It is thus implausible to believe that the PTO would have discounted the contents of the Bouve Declaration if it had known of Bouve's health problems. CoStar's allegations related to the Bouve Declaration are inadequate to state a claim for inequitable conduct.

C.      Distinction Between "Internet" and "internet"

Next the court addresses CoStar's allegations related to Semple's declaration during the reexamination of the '622 and '291 Patents that the terms "Internet" and "internet" had the same meaning at the time of the invention. (CoStar's Third Am. Compl. ¶¶ 98-99.) CoStar alleges that CIVIX failed to disclose that this declaration was inconsistent with CIVIX's position in previous litigation involving the '622 and '291 Patents. (*Id.* ¶¶ 100-04.) Once again, CoStar has failed sufficiently to plead the materiality of CIVIX's alleged omission under *Therasense*.

Prior to *Therasense*, the general rule was that "'any assertion that is made by a litigant . . . during litigation, which is contradictory to the assertions made . . . to the patent

examiner, comprises material information.'" *Environ Prods., Inc. v. Total Containment, Inc.*, No. CIV.A. 95-4467, 1997 WL 364464, at *4 (E.D. Pa. June 19, 1997) (quoting *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 837 F. Supp. 1444, 1477 (N.D. Ind. 1992), *aff'd*, 11 F.3d 1072 (Fed. Cir. 1993)); *see also* MPEP § 2001.06(c) ("Another example of such material information is any assertion that is made during litigation which is contradictory to assertions made to the examiner."). Moreover, PTO regulations explicitly require the disclosure of any non-cumulative information that "refutes, or is inconsistent with, a position the applicant takes" before the PTO regarding patentability. 37 C.F.R. § 1.56 (2013) ("Rule 56"). The Federal Circuit in *Therasense*, however, explicitly refused to adopt the materiality standard of Rule 56, stating that it is "overly broad because information is considered material even if the information would be rendered irrelevant in light of subsequent argument or explanation by the patentee." *Therasense*, 649 F.3d at 1294. Once again, therefore, the but-for materiality standard of *Therasense* applies, and CoStar must allege facts sufficient to suggest that the PTO would not have issued the '622 and '291 Patents if CIVIX had disclosed the inconsistency in its arguments.

CoStar alleges, with respect to the materiality of the inconsistency, that

> CIVIX knew that Mr. Semple's Internet declaration was material to the USPTO because it was submitted after its claims had been rejected for invalidity in view of prior art that disclosed "Internet" references. Moreover, CIVIX's litigation position was material to the USPTO's determination of patentability because a reasonable patent examiner would consider it important in deciding whether to allow the claims to survive reexamination because of the obvious inconsistency.

(CoStar's Third Am. Compl. ¶ 104.) The second sentence of that allegation merely states a legal conclusion (and again, after *Therasense*, a conclusion inadequate to establish inequitable conduct).

The first sentence is somewhat more substantive, but again is inadequate to allege but-for materiality. Paragraph 104 states that at least some of the claims of the '622 and '291 Patents (it

does not state which claims) were rejected for invalidity because of prior art that disclosed "Internet references." It is not clear how these unidentified "Internet" references are relevant to the claims of the '622 or '291 Patents, particularly because the patents do not claim the "Internet" in the abstract. Instead, they claim methods for using the Internet to connect a user to a database from a remote location and to retrieve information about items of interest in a particular geographic vicinity. The Third Amended Complaint does not explain how the "'Internet references" in ¶ 104 invalidated any of the proposed claims of the '622 or '291 Patents, or whether the invalidation related to the distinction, or lack thereof, between "Internet" and "internet" that Semple's Declaration addressed.

Moreover, CoStar's allegations of materiality are not only inadequate, but also implausible. All of the references to the "Internet" in the claims of the '622 and '291 Patents are capitalized. *See CIVIX-DDI, LLC v. Cellco P'ship*, No. 03 C 2792, 2005 WL 831307, at *2 (N.D. Ill. Apr. 6, 2005) ("The term 'Internet' appears in claims 6, 12, 20, 23, 26, 29, 38, 61, and 63 of the '622 patent, and claims 1 and 14 of the '291 patent. The term "internet" appears in claim 6 of the '307 patent."). Semple's declaration supporting the view that "Internet" and "internet" are interchangeable would thus serve to expand the universe of prior art references that could potentially invalidate the '622 and '291 Patents. That is, if "Internet" is equivalent to "internet," then any reference referring to either "Internet" or "internet" could potentially invalidate the patents. By contrast, if there is a distinction between the terms, only references to "Internet" have that potential.

Semple's declaration thus actually broadens the scope of the Patents, which might assist CIVIX in future infringement lawsuits, but hinders it during reexamination before the PTO, when

validity is at issue. Far from being but-for material, therefore, CIVIX's prior contrary position in litigation actually would have weighed in favor of patentability, not against it. It is thus implausible to allege that the PTO would have denied reissuing the '622 and '291 Patents if it had known of CIVIX's prior position.[8]

D.      Burying References

CoStar alleges that the '291 Patent is unenforceable because of CIVIX's submissions to the PTO that buried the most relevant references. (CoStar's Third Am. Compl. ¶¶ 85-87.) CoStar also alleges that CIVIX's disclosures with respect to the '622 Patent were inadequate because CIVIX did not submit an IDS with respect to that patent. (*Id.* ¶ 86.) The allegations relating to the IDSs accompanying the '622 and '291 patent applications are only three paragraphs long (*Id.* ¶¶ 85-87), and do not include any allegations regarding the materiality of CIVIX's allegedly inadequate disclosures. Those allegations are thus inadequate under *Exergen* and *Therasense*.

II.      '335 Patent

CoStar alleges that the '335 Patent is unenforceable due to inequitable conduct for three reasons: (1) it is a continuation of the '291 Patent, and its claims are not sufficiently distinct from the claims of the '291 Patent to avoid being tainted by the inequitable conduct; (2) CIVIX's submissions to the PTO buried references most relevant to the alleged obviousness of the '335 Patent, and CIVIX failed, upon request of the PTO, to specify the most relevant references (CoStar's Third Am. Compl. ¶¶ 108-131); and (3) CIVIX alternatively argued to the PTO that "internet" and "Internet" had the same meaning, and that they had different meanings, depending

---

[8] CoStar's allegations that Semple submitted his declaration to deceive the PTO regarding the patentability of the '622 and '291 Patents (CoStar's Third Am. Compl. ¶ 105) are also implausible. The submission of his declaration likely hurt CIVIX's case for patentability, rather than helping it.

on "whatever position it needs to take at that time" (CoStar's Third Am. Compl. ¶ 136). In light of the court's dismissal of CoStar's allegations that the '291 Patent is unenforceable, the first reason is without merit. The court addresses the other two reasons below.

A.    Burying References and Failing to Identify which References are Most Relevant

CoStar alleges that CIVIX, through the named inventors and prosecuting attorneys of the '335 Patent, submitted an excessive number of documents as part of its IDSs for the '335 Patent. (*Id.* ¶ 109 (31-page IDS including 245 U.S. patents, 63 foreign documents, and 270 non-patent documents); *id.* ¶ 112 (IDS listing 36 U.S. patents and 109 non-patent documents); *id.* ¶ 113 (50-page IDS listing more than 580 U.S. patents and non-patent documents). When the PTO specifically requested that CIVIX identify the most relevant references, CIVIX ultimately submitted a declaration by Semple identifying just 34 of the disclosed references. (*Id.* ¶ 118.) CoStar's allegations then identify specific disclosed references that were allegedly omitted from Semple's declaration. (*Id.* ¶¶ 121, 125.)

CoStar also alleges facts showing a plausible theory for how these omitted references were but-for material. Specifically, CoStar alleges that the omitted references disclose the use of the Internet or "internet-like networking systems generally" to communicate between a user and a remote database from which the user seeks information. (*Id.*) CoStar then alleges that if the PTO had focused on these references, it would have declined to issue claim 1 of the '335 Patent, and all of the claims dependent on it, on the ground of obviousness. (*Id.* ¶¶ 122-23, 126.) Finally, CoStar alleges that CIVIX knew of the materiality of the omitted references and intended to deceive the PTO by burying, and then upon request failing to highlight, those references. To show CIVIX's knowledge and intent, CoStar alleges that CIVIX argued to the PTO that none of its references

taught or suggested the use of the Internet in this context, and that the '335 Patent was thus non-obvious. (*Id.* ¶¶ 127-28.)

CIVIX contends that although CoStar's allegations list the references allegedly omitted from Semple's declaration, they specifically "fail[] to identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found." *Exergen*, 575 F.3d at 1329. But CoStar specifically alleges that the references are relevant "to all the asserted claims of the '335 Patent, as claim 1, the only independent claim, pertains to 'advertising over the Internet', and all other claims of the '335 Patent are dependent on claim 1." (CoStar's Third Am. Compl. ¶ 126.) That allegation adequately identifies the claims the withheld references are relevant to.

With respect to identifying where in the references the relevant information is found, CoStar does not identify page numbers to specifically pinpoint the relevant information in the withheld references. CoStar's allegations do, however, describe what information in the references is relevant. (*See id.* ¶ 125 (stating that the withheld references "disclose the use of CompuServe on the Internet" and "were relevant in teaching the use of the Internet-like networking systems generally"); *see also id.* ¶ 121.) Although a party alleging inequitable conduct would be well advised to include page numbers, doing so is not absolutely necessary to meet *Exergen*'s requirements if the pleading adequately describes the relevant information. Indeed, if the relevant information is adequately described, filling in the page and line numbers is merely an academic, redundant exercise. This court will not require such technical pleading.

Here, CoStar's descriptions of the relevant information in the withheld references are somewhat vague, but the court believes that they are adequate at the pleading stage to put CIVIX

on notice of the claims against it. In the context of the patents-in-suit, CoStar's descriptions plainly indicate that the relevant information in the withheld references is how to use the Internet to communicate between a user and a remote database from which the user seeks information. CoStar's allegations are thus adequate to pinpoint the "what" and "where" of the material omissions. *See Exergen*, 575 F.3d at 1329.

CIVIX next argues that CoStar's allegations are insufficient because CoStar has failed to establish that an intent to deceive the PTO is the "single most reasonable inference" to be drawn from the alleged facts. *Therasense*, 649 F.3d at 1290 (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)). As *Therasense* makes plain, however, the requirement that the intent to deceive be the single most reasonable inference stems from the requirement at the merits stage that the proponent of inequitable conduct prove its case by clear and convincing evidence. *See id.* ("[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" (quoting *Star Scientific*, 537 F.3d at 1366)). At the pleading stage, by contrast, the proponent of inequitable conduct need only plead sufficient facts that the court "may reasonably infer" knowledge and intent. *Exergen*, 575 F.3d at 1328-29 & n.5. CoStar's allegations meet that standard, insofar as they identify a plausible motive and opportunity for hiding the relevant references from the PTO.

Next, CIVIX contends that as a matter of law, "burying" references cannot constitute inequitable conduct. In support, it cites the Federal Circuit's comment that "[w]hen a reference was before the examiner, whether through the examiner's search or the applicant's disclosure, it can not [sic] be deemed to have been withheld from the examiner." *Scripps Clinic & Research*

*Found. v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991), *overruled on other grounds by Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282 (Fed. Cir. 2009); *accord Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000); *Litton Sys., Inc. v. Honeywell, Inc.*, 87 F.3d 1559, 1571 (Fed. Cir. 1996), *vacated on other grounds*, 520 U.S. 1111 (1997), *aff'd in part, rev'd in part, vacated in part, and remanded*, 140 F.3d 1449 (Fed. Cir. 1998), *abrogated by Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558 (Fed. Cir. 2000).

As a recent law review article explains, however,

> The *Scripps*, *Litton*, and *Fiskars* Federal Circuit decisions do not necessarily preclude burying from being a form of inequitable conduct as they did not address the burying issue directly. In *Scripps*, the reference had not been disclosed and instead was discovered by the patent examiner "on his own." In *Litton*, the patent applicant originally withheld the reference but later disclosed it during reissue. In *Fiskars*, the applicant disclosed a brochure describing what he considered to be the closest prior art to his invention, but the examiner indicated that the brochure had not been considered. The Federal Circuit consequently found no inequitable conduct because the brochure was before the examiner. None of these decisions speak directly to burying, and none necessarily preclude the practice from being a form of inequitable conduct.

Robert Brendan Taylor, *Burying*, 19 Mich. Telecomm. & Tech. L. Rev. 99, 107-08 (2012) (footnotes omitted). Accordingly, the Federal Circuit has not established definitively whether or under what circumstances burying may constitute inequitable conduct.

The court need not address that question directly in this case, because the alleged conduct extends beyond merely burying the relevant references. CoStar also alleges that CIVIX omitted material references in response to the PTO's specific request for assistance in identifying relevant references from the material in CIVIX's IDSs. Accepting these allegations as true, by deliberately focusing the PTO's attention on the references it identified, CIVIX successfully avoided scrutiny of other references that allegedly would have rendered its invention unpatentable. That behavior is

more culpable than merely submitting a large volume of references, as in a typical "burying" allegation. Moreover, CIVIX's alleged conduct directly violates its duty of candor to the PTO. In effect, CIVIX's response to the PTO's request is an affirmative misrepresentation that the identified references are more relevant than the disclosed, but not identified, references. Allegations of such behavior are adequate to state a claim for inequitable conduct.

B.    Contradictory Argument on Meaning of "Internet" and "internet"

CoStar's allegations that CIVIX's attorneys took whatever position was most favorable at the time with respect to the meanings of "internet" and "Internet" are insufficient to allege a claim for inequitable conduct because "an applicant is free to advocate its interpretation of its claims and the teachings of prior art." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1379 (Fed. Cir. 2008).

CoStar is correct that "[c]ases involving affidavits or declarations are held to a higher standard," and that the submission of false affidavits can thus constitute inequitable conduct. *Id.* Moreover, CoStar alleges that CIVIX submitted affidavits to "sw[ear] behind various 'Internet' references" during prosecution of the '335 Patent. (CoStar's Third Am. Compl. ¶ 135.) CoStar does not allege, however, that those affidavits directly took a position on the meaning of the term "Internet," instead merely alleging that they were inadequate to establish an earlier priority date. (*Id.* ("But those documents do not establish that CIVIX's early conception date involved the use of TCP/IP or the worldwide scope of the 'Internet,' as opposed to a more generic 'internet' network.").) Accordingly, CoStar has not adequately alleged that CIVIX submitted false affidavits, and it has thus failed to state a claim for inequitable conduct with respect to CIVIX's arguments about the meanings of "Internet" and "internet."

<u>CONCLUSION</u>

For the reasons explained above, CIVIX's motion to dismiss CoStar's inequitable conduct claims (Dkt. No. 109) is granted in part and denied in part. CoStar's claims in its Third Amended Complaint (Dkt. No. 99) that the '622 and '291 Patents are unenforceable because of inequitable conduct are dismissed, as is CoStar's claim that the '335 Patent is unenforceable due to inequitable conduct in the prosecution of the '291 Patent. CoStar's claim that the '335 Patent is unenforceable because of inequitable conduct in the prosecution of the '335 Patent shall stand, but paragraphs 132 through 137 of CoStar's Third Amended Complaint (Dkt. No. 99) are dismissed, as they fail to state a claim that CIVIX's alternative arguments on the meanings of "Internet and "internet" constitute inequitable conduct.

CIVIX's motion to dismiss LoopNet's inequitable conduct claim and its Sixth Affirmative Defense (Dkt. No. 112) is also granted in part and denied in part. LoopNet's claim that the '335 Patent is unenforceable due to inequitable conduct in the prosecution of the '291 Patent is dismissed. LoopNet's claim that the '335 Patent is unenforceable because of inequitable conduct in the prosecution of the '335 Patent shall stand, but paragraphs 56 through 61 of LoopNet's Second Amended Answer and Counterlcaims (12-8632, Dkt. No. 71) are dismissed, as they fail to state a claim that CIVIX's alternative arguments on the meanings of "Internet and "internet" constitute inequitable conduct. The dates set in Dkt. Nos. 83 and 131 shall remain in effect.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: May 15, 2013