IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COSTAR REALTY INFORMATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 4968 |
| | ) | |
| CIVIX-DDI, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |
| | ) | |
| CIVIX-DDI, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 7091 |
| v. | ) | |
| | ) | |
| LOOPNET, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |
| | ) | |
| CIVIX-DDI, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 8632 |
| v. | ) | |
| | ) | |
| LOOPNET, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM ORDER AND OPINION

JAMES F. HOLDERMAN, District Judge:

In these three consolidated cases, patent holder CIVIX-DDI, LLC ("CIVIX") alleges

infringement by CoStar Realty Information, Inc. ("CoStar") and LoopNet, Inc. ("LoopNet")

(collectively "CoStar/LoopNet"). In 12 C 4968, CIVIX alleges that CoStar has infringed three

of its patents, U.S. Patent No. 6,385,622 ("the '622 Patent"), U.S. Patent No. 6,415,291 ("the '291 Patent"), and U.S. Patent No. 8,296,335 ("the '335 Patent"). (Dkt. No. 108.)[1] Similarly, in 12 C 8632, CIVIX alleges that LoopNet infringed the '335 Patent (12 C 8632, Dkt. No. 1), and in 12 C 7091 CIVIX alleges that LoopNet infringed the '622 and '291 Patents (12 C 7091, Dkt. No. 1).

The parties stipulated the construction of six claim terms in the patents-in-suit, as follows:

"associated category" means "a classification both stored in the database and provided or selected by a user that divides particular items of interest into subgroups";

"geographic vicinity" means "a geographic region that includes and surrounds selected items of interest";

"hierarchically displaying" means "displaying geographical information in levels of abstraction";

"port" means "a terminal, for example, a personal computer with modem, from which a user of the invention can access the database storing the information about items of interest";

"request signal representative of a selected category and geographic vicinity" means "a single electronic representation of a user's selection of at least one category and at least one geographic vicinity"; and

"video" means "a presentation of multiple sequential frames of image data"—"video" cannot entail a single digital picture.

(Dkt. No. 157.) The parties then presented claim construction briefs regarding ten other disputed claim terms. (Dkt. Nos. 159, 169, 173.) The parties' counsel presented oral argument to the court on September 20, 2013. The court construes each of the disputed terms as stated below.

---

[1] Unless otherwise indicated, citations to the docket are to the docket of 12 C 4968.

<u>FACTUAL BACKGROUND</u>

CIVIX owns the '622 and '291 Patents, both of which were applied for in 2001 and issued in 2002. (Dkt. No. 99, Exs. A & B.) They each claim methods to locate points of interest in a particular geographical region by accessing a database from a remote location. CIVIX also owns the '335 Patent, which was applied for in 2002 and issued in 2012. (Dkt. No. 99, Ex. F.) The '335 Patent claims methods for using the Internet to provide a user of such a database advertising information related to the requested geographic region or item of interest. Each of the three patents-in-suit shares the same patent family tree, and all derive from Application No. 08/371,425, which was filed January 11, 1995. (Dkt. No. 159, Ex. A.) The patents all share essentially the same written description. Accordingly, for ease of reference, the court's citations to the patents' written description refer to the first issued patent, the '622 Patent, unless otherwise indicated.

In general, the patents claim a number of systems and methods that allow a user to access information about "items of interest" in a particular geographic vicinity from a remote location. '622 Patent 1:45-57. For example, a user at a port, such as a computer linked to the Internet, could identify a geographic vicinity, such as "Logan Square" or "Chicago," and a category, such as restaurants, historical sites, or antique stores. *Id.* 2:10-32. After communicating the user's selections to a remote database, the database generates a response to the user indicating the location of the items of interest in the category and vicinity that the user has selected. *Id.* The response is then communicated to the user's port for the user to view. *Id.* In addition to the location, the database can also supply additional information about the items of interest, including potentially paid advertisements about the items of interest. *Id.* 2:54-3:2. Claim 1 of the '622 Patent, though not asserted in these cases, is representative and claims the following:

System for remotely determining the position of a selected category of items of interest in a selected geographic vicinity from a database, the system comprising:

(A) a database for storing information about a plurality of items of interest, the information including, for each of the items of interest, a geographical position and at least one association category,

(B) a communications link for communicating between a user of the system and the database,

(C) an information controller for transmitting a portion of the information in the database to the user via the link upon receipt of a request signal representative of a selected category and geographic vicinity, the transmitted portion of the information including identification of geographic position for at least one of the items of interest within the selected category and geographic vicinity, and

(D) a port for remotely accessing the portion of information via the link, the port generating the request signal in response to inputs by the user which are representative of the selected category and geographic vicinity, the port having a user interface for accepting the inputs and for indicating to the user the position [of] at least one of the items of interest in the selected category and geographic vicinity.

Each of the claims asserted in this case also requires the communications link to be the Internet or that the database and the user port be connected at least in part through the Internet. *See* '622 Patent cls. 20, 26; '291 Patent cls. 8, 16, 17, 22, & 23; '335 Patent cls. 1, 2, 6, 8-13, & 17-24.

Various patents in the patent family of the patents-in-suit have been construed previously by judges both in this district and in other districts. Claim terms of one parent patent were construed more than a decade ago in *CIVIX-DDI, LLC v. Microsoft Corp.*, 84 F. Supp. 2d 1132, 1136 (D. Colo. 2000) (Babcock, J.), *aff'd*, 18 F. App'x 892 (Fed. Cir. 2001) (the "*Microsoft* Litigation*"). Claim terms of the '622 Patent, the '291 Patent, and another parent patent were construed by Judge St. Eve of this district court more than half a decade ago in two cases: *CIVIX-DDI, LLC v. Cellco P'ship d/b/a Verizon Wireless*, No. 03 C 3792 (N.D. Ill. Apr. 6, 2005)

4

(the "*Expedia* Litigation") and *CIVIX-DDI, LLC v. Hotels.com, L.P.*, No. 05 C 6869 (N.D. Ill. May 11, 2007) (the "*Hotels.com* Litigation").

<u>LEGAL STANDARD</u>

Claim construction is a legal determination. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390-91 (1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc*., 381 F.3d 1111, 1115 (Fed. Cir. 2004)). When construing a patent's claims, the court, whether at the trial or appellate level, must give disputed claim terms their "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13. The effective filing date of all of the patents-in-suit is January 11, 1995, the filing date of the initial application of which each of applications leading to the patents-in-suit is a continuation. *See PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008).

To determine the ordinary and customary meaning of a claim term, the court should examine first the entire intrinsic evidence, including the claims, the specification, and the prosecution history. *Id.* at 1313-17. Usually, the specification "is dispositive" because "it is the single best guide to the meaning of a disputed term." *Id.* at 1315 (quotation marks and citation omitted). Nonetheless, the court must not import a limitation from the specification into the claim, because "[g]enerally, a claim is not limited to the embodiments described in the specification unless the patentee has demonstrated a 'clear intention' to limit the claim's scope with 'words or expressions of manifest exclusion or

restriction.'" *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 843 (Fed. Cir. 2010) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)).

The prosecution history also "provides evidence of how the PTO [U.S. Patent and Trademark Office] and the inventor understood the patent" and "can often inform the meaning of the claim language by demonstrating . . . whether the inventor limited the invention in the course of prosecution." *Phillips*, 415 F.3d at 1317. Nevertheless, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*

Finally, if the intrinsic evidence does not resolve the issue of the proper claim construction, the court may consider extrinsic evidence such as "expert and inventor testimony, dictionaries, and learned treatises" in construing a patent's claims. *Id.* (quotation marks and citation omitted). Such extrinsic evidence "can shed useful light on the relevant art" but is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* (quotation marks and citations omitted).

<u>ANALYSIS</u>

As an initial matter, the parties dispute the effect that the court should give to the prior claim construction orders of the courts in the *Microsoft* Litigation, the *Expedia* Litigation, and the *Hotels.com* Litigation. Because CoStar/LoopNet were not parties to any of the prior litigation, the parties agree that the constructions in those cases do not have preclusive effect. *See Markman*, 517 U.S. at 391 ("[I]ssue preclusion could not be asserted against new and independent infringement defendants even within a given jurisdiction . . . ."). CIVIX contends, however, that this court

should defer to the prior claim construction rulings unless they are "clearly erroneous" or incorrect as a matter of law. *See DE Techs., Inc. v. IShopUSA, Inc.*, 826 F. Supp. 2d 937, 940-41 (W.D. Va. 2011); *see also Sears Petroleum & Transp. Corp. v. Archer Daniels Midland Co.*, No. 03-CV-1120, 2007 WL 2156251, at *8 (N.D.N.Y. July 24, 2007) (granting "considerable deference" to a prior decision even when the parties raised new arguments that were not considered by the previous judge). By contrast, CoStar/LoopNet argue that, although prior decisions are instructive, the court must perform an independent evaluation of each disputed claim term. According to CoStar/LoopNet, prior constructions are particularly unhelpful where the parties in this case raise additional arguments that were not previously addressed.

The Supreme Court in *Markman* established that uniformity is an important consideration in claim construction, because "the limits of a patent must be known for the protection of the patentee, the encouragement of the inventive genius of others and the assurance that the subject of the patent will be dedicated ultimately to the public." *Markman*, 517 U.S. at 390 (citation, quotation marks, and alteration omitted). The Supreme Court then noted that as a legal determination, a claim construction ruling should "promote (though it will not guarantee) intrajurisdictional certainty through the application of *stare decisis* on those questions not yet subject to interjurisdictional uniformity under the authority of the single appeals court." *Id.* at 391. That pronouncement does not resolve the issue of the precedential value of claim construction in the district court, of course. District court opinions are not binding authority even in the district in which they are rendered, as the Supreme Court acknowledged by stating that making claim construction a matter of law "will not guarantee" consistency even within a particular district court. *Id.*

As a result, "there is an ongoing debate as to the preclusive effects of a *Markman* ruling" in the district court. *DE Techs.*, 826 F. Supp. 2d at 940 (citation and quotation marks omitted). Moreover,

> [w]ith little guidance from the Federal Circuit on the issue, district courts have split on whether a *Markman* claim construction ruling has preclusive effects in subsequent litigation involving the same patent, especially where the prior litigation settled before a final judgment was entered, the ruling has otherwise yet to be applied in a final judgment regarding infringement or validity, or where the ruling has not undergone Federal Circuit review.

*Id.* (citation and quotation marks omitted). Courts in this district have stopped short of affording complete deference to prior non-preclusive district court claim constructions, instead giving them the status of only persuasive authority. *See Nilssen v. Motorola, Inc.*, 80 F. Supp. 2d 921, 924 n.4 (N.D. Ill. 2000) (Shadur, J.) (giving respect to prior decisions but noting that court "is not compelled to reach the same conclusions"); *see also Kim v. The Earthgrains Co.*, No. 01 C 3895, 2005 WL 66071, at *11 (N.D. Ill. Jan. 11, 2005) (Mason, M.J.) ("While stopping short of according a preclusive effect to Judge Hart's claim construction, the court will bear his interpretations in mind as instructive while rendering its own construction of the claims at issue here."); *Jackson v. Vtech Telecomms. Ltd.*, No. 01 C 8001, 2003 WL 25815373, at *3 (N.D. Ill. Oct. 23, 2003) (Castillo, J.) (court will "consult, adopt and refer to these prior opinions when we find it persuasive, reasonable, economical or otherwise appropriate to do so"). Indeed, Judge St. Eve. came to a similar conclusion in the *Hotels.com* Litigation involving CIVIX about the prior *Expedia* Litigation. *Hotels.Com*, 2010 WL 4386475, at *3 ("In considering the proper construction of 'associated category,' the Court places little weight on that earlier agreement because Defendants in the present case were neither parties in *Expedia* nor were they in privity with those parties."). Accordingly, this court will treat the prior claim construction opinions in the *Microsoft*,

*Expedia*, and *Hotels.com* Litigations as persuasive authority and provide them the deference provided any legal holding by a respected colleague. With that principle in mind, this court will undertake its own review of the pertinent information related to each of the disputed claim terms.

A.     "[T]he request containing (a) at least one user-selected category and (b) a user-selected geographic vicinity"

The parties propose the following constructions:

| Patents/Claims | CoStar/LoopNet's Proposed Construction | CIVIX's Proposed Construction |
|---|---|---|
| '335 Patent, all claims | A single electronic representation of at least one user-selected category and a user-selected geographic vicinity. | One or more electronic representations of at least one user-selected category and a user-selected geographic vicinity. |

The disputed terms appear in the context of claim 1 of the '335 Patent, which recites "at a database, receiving at least in part through the internet, *a request* from one of a plurality of ports remotely located from the database, *the request* containing (a) at least one user-selected category and (b) a user-selected geographic vicinity." '335 Patent 14:57-60 (emphasis added). In essence, CIVIX contends that the "a request" equals "one or more requests," and that the subsequent reference to "the request" also refers to the "one or more requests." According to CIVIX, therefore, the user-selected category and geographic vicinity need not appear in the same request, but can appear in multiple requests. By contrast, CoStar/LoopNet assert that the reference to "the request" means only a single request with both the category and geographic vicinity included.

The parties, consistent with the construction by the court in the *Microsoft* Litigation and the stipulations in the *Hotels.com* Litigation, have stipulated that the term "request signal representative of a selected category and geographic vicinity" in the '622 Patent must refer to "a single electronic representation of a user's selection of at least one category and at least one

geographic vicinity." (Dkt. No. 157.) CoStar/LoopNet contend that the court should construe the term "request" the same way as the term "request signal," even though the two terms are distinct. For the court to accept without further analysis that "request" and "request signal" mean the same would ignore the "general presumption that different terms have different meanings." *Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1369 (Fed. Cir. 2012) (citation omitted). That presumption may be overcome, of course, in the face of "evidence to the contrary." *Id.* (citation and quotation marks omitted). The court must therefore independently examine the claims, specification, and prosecution history to determine if "request" had the same meaning as "request signal" to a person of ordinary skill in the art as of January 11, 1995, when the parent application of the patents-in-suit was filed.

To support its position that "the request" means "one or more requests," CIVIX argues that "[a]s a general rule, the words 'a' or 'an' in a patent claim carry the meaning of 'one or more.'" *01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012) (citation and quotation marks omitted). Moreover, "[t]he subsequent use of definite articles 'the' or 'said' in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning." *Id.* (citation and quotation marks omitted). "The exceptions to this rule are extremely limited" and apply only when a patentee has "evince[d] a clear intent to limit 'a' or 'an' to 'one.'" *Id.* (citation and quotation marks omitted). CIVIX asserts that the rule applies here to justify its substitution of "one or more" for "the."

Even assuming that "a" means "one or more" in this case, so that there can be more than one request in an infringing method, CIVIX's argument fails because the claim language unequivocally specifies what each request must contain, regardless of whether there is one or more

10

of them. Thus, the claim language provides for "the request *containing*" both the category and geographic vicinity. There could be multiple requests in an infringing method, but each request must contain both the category and the geographic vicinity.

That reasoning is consistent with *Tivo v. EchoStar*, in which the Federal Circuit interpreted the claim language "assembling said video and audio components into an MPEG stream." 516 F.3d 1290, 1303 (Fed. Cir. 2008). Although the Federal Circuit acknowledged the rule that "a" generally means "one or more," it held that the language required the assembly of audio and video components into a single MPEG stream. *See id.* ("The pertinent claim language refers to 'assembl[ing] said video and audio components into an MPEG stream,' which in context clearly indicates that two separate components are assembled into a single stream, not that the video components are assembled into one stream and the audio components into a second stream."). The term "contains" here acts like the term "assembles" in *Tivo*, suggesting that a single request contains both the category and geographic vicinity.

The specification provides further support for this determination as well, because the specification never discusses the possibility of multiple requests each containing part of the information transmitted to the database. It is true, as CIVIX points out, that the specification does refer to "requests," plural, in at least two locations. '622 Patent 12:19-24 ("user requests"); *Id.* fig.11 ("remote requests"), but those references appear in a different context and do not indicate a situation in which one request to the database contains a category and another contains the geographic vicinity. Accordingly, the court construes "the request containing (a) at least one user-selected category and (b) a user-selected geographic vicinity" to mean "the request containing, in a single electronic representation, (a) at least one user-selected category and (b) a

11

user-selected geographic vicinity."[2]

B.      "[A]dvertising information about a business" and "advertisements"

The parties propose the following constructions of the terms "advertising information about a business" and "advertisements":

| Patents/Claims | CoStar/LoopNet's Proposed Construction | CIVIX's Proposed Construction |
|---|---|---|
| '291 Patent, Claims 22 & 23 | "advertising information about a business": Paid promotion of a business name, service, or product different from an item of interest. | "advertising information about a business": A paid promotion of a commercial enterprise's name, service, or product. |
| '335 Patent, all claims | "advertisements": Paid promotions of a business name, service, or product different from an item of interest. | "advertisements": Paid promotions. |

The parties' constructions differ in two significant respects. First, CoStar/LoopNet contend that "advertising information about a business" and "advertisements" both mean the same thing, whereas CIVIX proposes different constructions. In particular, CIVIX contends that "advertisements" are simply paid promotions, whereas "advertising information about a business" must be a paid promotion specifically about a business. CoStar/LoopNet's proposed construction, on the other hand, defines both "advertising information about a business" and "advertisements" to be paid promotions of a business.

The court agrees with CIVIX's construction on this point, and will construe "advertising information about a business" and "advertisements" to have different meanings. As mentioned earlier, courts "often assume different terms convey different meanings" unless the specification teaches otherwise. *Chi. Bd. Options Exch.*, 677 F.3d at 1371. CoStar/LoopNet contend that in this

---

[2] The court has modified CoStar and LoopNet's proposed construction to provide more clarity for the jury if and when this case is presented to a jury.

case, the specification uniformly discusses advertisements related to businesses, and that the two terms should thus have the same meaning. *See, e.g.*, '622 Patent 2:67-3:2 ("As such, certain advertisers that are connected with the selected category of items of interest can promote a name or business.").

That assertion, however, ignores parts of the specification plainly contemplating that an advertisement may promote a non-business. For example, the specification states that "[i]n still another aspect, the invention also communicates at least one advertisement associated with at least one of the items of interest to the user." *Id.* at 2:65-67; *see also* '335 Patent at 16:25-27 (claiming the method "wherein at least one of the plurality of advertisements provides advertising information about at least one of the plurality of items of interest"). The specification explicitly defines an "item of interest" to mean "services, products, geographic sites, architectural sites, stores, restaurants, public services, and other items which a user of the invention may wish to locate." '622 Patent 1:61-64. Public services, at least, are not businesses, so an advertisement for a public service item of interest would not promote a business. The court will thus construe "advertisements" to include promotion of non-businesses.

Second, CoStar/LoopNet propose limiting the definitions of the "advertising" limitations with the phrase "different from an item of interest." Thus, they propose that both "advertisements" and "advertising information about a business" mean "paid promotions of a business name, service, or product different from an item of interest." In support, CoStar/LoopNet point out that the specification frequently distinguishes an item of interest from an advertisement. *See, e.g.*, '335 Patent 16:35-37 (claiming a method including a display of a "plurality of items of interest together with the advertisements").

The problem with that construction is that it suggests that the advertisements cannot promote an item of interest, a concept that is central to the invention. *See* '622 Patent 13:59-62 ("In the normal use of the invention, the advertiser who pays for the advertisement is generally associated with the items of interest being displayed."); *see also* '335 Patent at 16:25-27 (claiming the method "wherein at least one of the plurality of advertisements provides advertising information about at least one of the plurality of items of interest"). Thus, although the advertisement is distinct from the item of interest in the claimed method, the advertisement may promote the item of interest.

Accordingly, the court adopts CIVIX's proposed constructions with one minor change.[3] The term "advertisements" means "paid promotions" and the phrase "advertising information about a business" means "paid promotion of a business name, service, or product."

C.     "[T]he transmitted portion of the information including identification of geographic position . . . wherein the portion of information comprises additional detail for at least one of the items of interest . . . wherein the additional detail comprises [video (Claim 20) / digital pictures (Claim 26)]

Claim 1 of the '622 Patent recites

an information controller for transmitting a portion of the information in the database to the user via the link upon receipt of a request signal representative of a selected category and geographic vicinity, the transmitted portion of the information including identification of geographic position for at least one of the items of interest within the selected category and geographic vicinity[.]

'622 Patent 14:66-15:6. Claim 18 then recites the "[s]ystem according to claim 1, wherein the

---

[3] CIVIX substitutes "commercial enterprise" for the term "business" in its constructions, a change the parties agree is minor and without substantive significance. Because in this context "business" is a term with a plain meaning and well known, the court holds that it does not require additional construction. In addition, the term "business" is simpler than "commercial enterprise" and less apt to lead to confusion when used in jury instructions. The court will thus use the term "business."

portion of information comprises additional detail for at least one of the items of interest." *Id.* 15:55-57. CoStar/LoopNet contend that, read alongside claim 1, claim 18 (and all asserted claims that depend from it) requires that the "portion of information" transmitted to the user include both the geographic position of an item of interest and "additional detail" about that item of interest *in a single transmission*. CIVIX, by contrast, contends that no additional construction is necessary and that, in any case, the additional detail may be sent in a separate transmission following the transmission of the geographic location.

CIVIX's argument that no additional judicial determination is necessary is without merit. In support, CIVIX cites the familiar refrain that claim construction "is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). The Federal Circuit's comment in *U.S. Surgical*, however, explains the principle that the court need not "repeat or restate every claim term in order to comply with the ruling that claim construction is for the court." *Id.* In the same paragraph, however, the Federal Circuit reaffirmed that "[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *Id.* Here, the parties plainly dispute the meaning of the language in claim 18. Indeed, the relevant language is found in separate dependent and independent claims, requiring an understanding of how those claims relate for its interpretation. The court is better situated than a jury to resolve such a dispute. *See Markman*, 517 U.S. at 389 (holding that claim construction is a question of the law for the court in part because "the claims of patents have become highly technical in many respects as the result of special doctrines relating to the proper form and scope of claims"). The court therefore finds it necessary to resolve the parties' dispute regarding whether

the additional detail and the geographic location must be sent in the same transmission.

CoStar/LoopNet base their position on the principle that "[a] claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers." 35 U.S.C. § 112(d). Thus, they argue, "the portion of information" comprising "additional detail" in claim 18 is the same "portion of information" in claim 1 that is transmitted in response to the request signal and includes the geographic location of an item of interest.

The court agrees with CoStar/LoopNet's interpretation. There is no other "portion of information" to which claim 18 could be referring other than the "portion of information" specified in claim 1. Indeed, claim 18 recites the "[s]ystem according to claim 1, *wherein* the portion of information comprises additional detail." Grammatically, the "wherein" plainly refers to the "portion of information" in the "system according to claim 1." Claim 18 thus requires that the additional detail and geographic location of an item of interest be sent in the same transmission.

CIVIX contends that certain embodiments in the written description suggest an alternative interpretation, insofar as they describe a system in which the additional detail is sent after the geographic location in a separate transmission. For example, the written description explains that "it should be apparent to those skilled in the art that any of the items of interest *within a displayed geographic vicinity* can be selected by a user and that the database can *thereafter* supply additional detail about that selected item of interest." '622 Patent 13:65-14:1 (emphasis added). In this embodiment, the additional detail is not sent until after the user selects one of the items of interest with respect to which the geographic location has already been sent. *See also id.* 2:56-59 ("Such a feature is advantageous in that, *once* the port displays the geographic vicinity with the items of

16

interest, a user can *thereafter* select further additional detail about one or more of the items of interest." (emphasis added)). Moreover, CIVIX notes that no other claim in the '622 Patent would encompass this embodiment if claim 18 does not, and it contends that CoStar/LoopNet's construction must therefore be incorrect.

The law is well established, however, that "read in the context of the specification, the claims of the patent need not encompass all disclosed embodiments." *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008). To the contrary, "the mere fact that there is an alternative embodiment disclosed . . . that is not encompassed by [the] claim construction does not outweigh the language of the claim, especially when the . . . construction is supported by the intrinsic evidence." *Id.* Moreover, here the intrinsic evidence does support CoStar/LoopNet's construction, because the written description also describes a preferred embodiment in which the "additional detail" is sent in the same transmission as the geographic location. *See* '622 Patent 13:50-53 (describing the preferred embodiment pictured in figure 12 in which "certain advertising information is *included within, or attached to*, the geographic vicinity which is displayed or printed to a user at a remote port" (emphasis added)). The court therefore adopts a modified version of CoStar/LoopNet's construction,[4] and holds that claim 18 requires that "the portion of information transmitted to the user must include both the geographic position of the item of interest and additional detail about the item of interest in the same transmission."

D.      "Database"

CoStar/LoopNet contend that the term "database," which is found throughout the '622,

---

[4] The court has altered CoStar and LoopNet's proposed construction to provide more clarity for the jury, but without altering its substance.

'291, and '335 Patent claims, means "software, operating on a computer, which stores a collection of related information organized for access by a user from a port." CIVIX contends that "database" means "a collection of related information organized for convenient access."

The court agrees with CIVIX, for two reasons. First, the courts in the *Microsoft* and *Hotels.com* Litigations both construed database as "a collection of related information organized for convenient access." *See Microsoft*, 84 F. Supp. 2d at 1157; (Dkt. No. 159, Ex. C, at 13-15.) As noted above, those opinions are only considered to be persuasive, not binding, authority, but they provide well-reasoned support to CIVIX's construction.

Second, CoStar/LoopNet's proposed construction would make other claim terms superfluous, in violation of the Federal Circuit's guidance that "[c]laims must be interpreted with an eye toward giving effect to all terms in the claim." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP,* 616 F.3d 1249, 1257 (Fed. Cir. 2010) (citation and quotation marks omitted); *see also Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000) (refusing to adopt a construction that would render a claim term superfluous). Thus, if a "database" included only collections of information that could be "accessed by a user from a port," it would render superfluous, for example, the limitation in claim 1 of the '622 Patent reciting "a port for remotely accessing the portion of information" from the database. '622 Patent 15:7-8; *see also id.* 14:64-65 (reciting "a communications link for communicating between a user of the system and the database"). Similarly, every other claim reciting a database in the patents-in-suit involves communications between the database and a user at a port. *See, e.g.*, '622 Patent cls. 33, 47, 58; '335 Patent, cl.1; '291 Patent cls. 1, 14.

It is thus irrelevant that the specification states that "'[r]emote database' or 'database' are

used herein to denote a database, e.g., a client server, which stores information for access by a user of the invention from a port." '622 patent 2:3-4. It is true that the court "will adopt a definition that is different from the ordinary meaning when 'the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history.'" *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1329 (Fed. Cir. 2009) (citation omitted). Here, however, the specification's redefinition of the term includes only the additional requirement that the database information be accessible to a user from a port. The claims already incorporate that additional requirement explicitly, and so the court need not redundantly include it in the construction of the term "database."

With respect to whether a database must comprise "software, operating on a computer," CoStar/LoopNet point to the specification's statement that "[t]he invention generally incorporates software to facilitate the several embodiments described herein and to support the principles of the invention." '622 Patent 11:15-17. Indeed, it is difficult to imagine the invention operating without software. Whether the software used by the invention is part of the database itself, or rather simply accesses the database, is another question.

On that point, CIVIX contends that "[s]oftware does not itself store information; it tells other devices to store information." (Dkt. 169, at 14.) In support, it cites *Webster's New World Dictionary of Computer Terms*, with a 1994 copyright date. (Dkt. No. 169, Ex. 8 (defining "software" as "a generic term for any computer program or programs; instructions that cause hardware to do work").) The specification also supports this distinction between the software that accesses a database and the database itself, in many cases suggesting that the term "database" is broader than merely "software." For example, the specification explains that "[t]he

database is, typically, a personal computer, mainframe, work-station, mini-computer, or digital data processor." '622 Patent 2:37-39. The database cannot be merely the software that operates on the computer to store information, therefore, but must include the entire computer itself. Similarly, figure 1 of the '622 Patent makes clear that the database *includes* an entire computer (or other information controller), and thus cannot be merely the software that runs on the computer. *Id.* at fig.1 (showing that the database (12) encompasses an "information controller" (14), or computer); *see also id.* 4:56-59 ("The database 12 includes an information controller 14 . . . which controls the access and flow of information into and out of the database."). Construing a "database" to be merely software would thus construe the term too narrowly.

Similarly, the specification's discussion of software distinguishes it from the database on which it operates. For example, the specification states that "the data within the database can be maintained, for example, on a SQL-server or in xBASE," two kinds of software. '622 Patent 11:17-19. Although the database is maintained by software, that description confirms that the database is not itself synonymous with software. *See id.* at fig.11 (showing the database separately from the "data manager"). The court therefore adopts CIVIX's construction that a database is "a collection of related information organized for convenient access."

    E.    "[A]t a database, receiving at least in part through the Internet, a request from one of a plurality of ports"

Claim 1 of the '335 Patent recites the following step: "at a database, receiving at least in part through the Internet, a request from one of a plurality of ports." CoStar/LoopNet propose that the court explain this limitation as follows: "This claim language means that the request received by the database is the same as the request from one of the plurality of ports."

In response, CIVIX argues that requiring the request from the port be the "same" as the

request received at the database suggests that the two requests may be identical, when in fact the specification contemplates that the request may change in its form during the transmission from the port to the database. For example, figure 11 teaches that the user requests can go first from the port to a "system kernel," which "traps all user inputs and determines required actions," including sending a further "data request" to the "data manager," which in turn obtains the data from the database. '622 Patent at fig.11. That process suggests that the "request" itself may take different forms as it passes from the port to the database. Any construction requiring the "request" to be identical throughout the process inappropriately adds a limitation to the claims. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998) ("We know of no principle of law which would authorize us to read into a claim an element which is not present . . . ." (alteration and citation omitted)).

Although the claim language does not require that the request remain identical throughout transmission, it does require the request received at the database have *originated at* the port. That meaning is already plain from the claim language requiring that the received request be "from one of a plurality of ports," and the parties do not dispute that meaning. No judicial construction is therefore necessary. *U.S. Surgical*, 103 F.3d at 1568 ("Claim construction is a matter of resolution of *disputed meanings* and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." (emphasis added)).

F. "[Determining, at the database, a plurality of advertisements in response to the request . . . from the database, transmitting, at least in part through the Internet, the response to the port"

Claim 1 of the '335 Patent recites the following steps: "[D]etermining, at the database, a

plurality of advertisements in response to the request . . . from the database, transmitting, at least in part through the Internet, the response to the port." The dispute with respect to this claim term is parallel to that immediately above. CoStar/LoopNet propose that the court explain that "this claim language means that the response transmitted to the port is the same as the response determined at the database." Again, however, the specification teaches that the response can take multiple forms as it travels from the database to the port. *See* '622 Patent fig.11 (passing information from the database to a "data manager" to a "map manager" to a "display manager," which supplies "screen updates" to the "display"). It is thus not appropriate to say that the response the port receives is the "same" as the response the database sends, but rather that it "originates" in the response the database sends. Again, that meaning is already undisputed and clear from the existing claim language, so the court need not construe the claim language.

G.    "[G]eographical/geographic position"

The parties agree that the terms "geographical position" and "geographic position" have the same meaning, but they dispute what that meaning is. CoStar/LoopNet contend that the terms mean "the specific location, for example, an address, of an item of interest within a geographic vicinity." CIVIX, by contrast, contends that they mean "a place within a geographic vicinity."

The parties in the *Expedia* Litigation stipulated to CIVIX's proposed definition for "geographical/geographic position." The terms were also construed previously by Judge St. Eve in the *Hotels.com* Litigation consistent with CIVIX's proffered definition. (Dkt. No. 159, Ex. C, at 15-18.) The *Hotels.com* Litigation, however, addressed the question of whether a "geographical/geographic position" was a location defined absolutely, or relative to other geographic reference points. (*Id.*) The parties in the *Expedia* Litigation and the *Hotels.com*

22

Litigation did not raise the question of whether a "geographical/geographic position" is a specific location or a general place. The construction of "geographical/geographic position" in previous cases is therefore of limited value to the court here.

Similarly, the written description is of limited helpfulness, at least directly, for the terms "geographical/geographic position" do not appear in the specification outside of the claims themselves. Within the claims, claim 1 of the '622 Patent recites that the database stores information including "for each of the items of interest, a geographical position," '622 Patent 14: 61-62; *see also id.* 16:23-24, and that the information transmitted to the port includes "identification of geographic position for at least one of the items of interest within the selected category and geographic vicinity," *id.* 15:3-6. Similarly, the '291 Patent recites a database storing information including "spatial detail defining a geographic position." '291 Patent 14:63-64. From those references, one can conclude that a geographic position serves to identify an item of interest within a geographic vicinity, and that, although distinct from spatial detail, a geographic position can be defined by spatial detail.

According to the specification, moreover, spatial detail can include "a map of the items of interest in the selected category, as well as street and landmark information displayed relative to the user's position at the remote port." '622 Patent 2:45-49. In other words, spatial detail includes information about the area surrounding a user's position to assist the user in locating an item of interest.

From the specification, therefore, one can conclude that a geographic position represents the location of an item of interest, and that spatial detail is information about the surrounding area

that assists a user in finding that location.[5] For example, a geographic position might be "219 S. Dearborn in Chicago," while spatial detail might include instructions to help a user locate 219 S. Dearborn, such as "three blocks west of the Art Institute and one block north of the Harold Washington Library," or "two blocks east of this port" at which a user might be standing.

The question remains, however, about the degree of specificity the patents-in-suit require for the definition of a geographic position. On that question, it is plain that CIVIX's proposed

---

[5] That conclusion is confirmed by the prosecution history, in which the patentee described the difference between "spatial detail" and "geographic position" to the patent examiner during reexamination of the '622 Patent as follows:

> Patent Owner believes that one skilled in the art would understand that spatial detail is geographic information provided about a geographic vicinity that may include, but is not restricted to, data relating to geographic positions, such additional geographic information locating items of interest for the user within the vicinity.

> Since spatial detail is construed as geographical information relating to a region or area, spatial detail provides geographic information, which may include data relating to the geographic locations (e.g., addresses or positions), so that the geographic locations can be found within a vicinity using the geographic information.

> Therefore one having ordinary skill in the art would readily understand that spatial detail is not a mere location/address, but requires sufficient information in relationship to the location address that reasonably defines the location/address with respect to a geographic vicinity. . . .

> . . . .

> In summary, Patent Owner submits that an address/location alone is not spatial detail because an address/location does not relate to its surroundings. It is this feature of relating an address/location to its surroundings (i.e., spatial detail) that distinguishes the invention of the '622 patent from a mere address/location.

(Dkt. No. 158, Ex. 9, at 622RE1-1060 thru 1062.)

definition of "place" is too general. The specification, for example, includes a figure displaying a list of "well-known places . . . so that a user can, appropriately, select a geographic vicinity within which to locate the items of interest." '622 Patent 7:39-40; *see also id.* at fig.3C. The specification thus uses the term "place" synonymously with "geographic vicinity." Because a geographic position serves to identify "items of interest *within* the selected . . . geographic vicinity," *id.* 15:3-6, a geographic position must be defined more specifically than the general "place."

In addition, the places listed in figure 3C include such general geographic neighborhoods as "Hollywood," "Marina Del Ray," and "Santa Monica." *Id.* An item of interest located generally in "Hollywood," however, would not provide enough detail to allow a user to identify the item of interest, which is the purpose of the patent. *See* '622 Patent cl.1 (reciting a "[s]ystem for remotely determining the position of a selected category of items of interest"). CIVIX's proposed definition is thus inappropriate.

On the other hand, defining a geographic position as "an address" would be too specific. There are other ways to specifically identify a location without resorting to an address (and also without resorting to "spatial detail" defining the location relative to the surrounding area), such as "on the corner of Jackson and Dearborn." Moreover, nothing in the patents limits the definition of a geographic position to an address. The court thus believes it would be misleading to include the language "for example, an address" in the definition. *See Cisco Sys., Inc. v. Teleconference Sys., LLC*, No. C 09-01550, 2011 WL 5913972, at *8 (N.D. Cal. Nov. 28, 2011) ("The Court agrees that providing such an unexhausted list of examples would not assist the jury and could cause some confusion.").

Accordingly, the court construes "geographical/geographic position" to mean "a specific

location within a geographic vicinity."[6]

> H.    "[W]herein a user at the port may locate the one item of interest"

This claim language appears in claim 14 of the '291 Patent, which reads as follows:

> A method for determining the position of one or more items of interest in a selected category, comprising:

> storing information about the items of interest in a database, the information including, for each of the items of interest, at least one associated category and spatial detail defining a geographic position; and

> supplying information about at least one of the items of interest to one of a plurality of ports, connected to the database at least in part through the Internet, in response to inputs at the one port, wherein a user at the port may locate the one item of interest.

'291 Patent 15:34-16:9. CoStar/LoopNet contend that the "wherein" clause at the end of the second claim limitation means "supplying the specific location of an item of interest to a user at a port." By contrast, CIVIX contends that the "wherein" clause is not a claim limitation and does not require construction.

CIVIX admits, however, that "[t]he 'wherein' clause states what results from supplying stored geographic information about an item of interest—the capability of a user to locate that item of interest." (Dkt. No. 169, at 20.) Although the "wherein" clause is not a separate claim step, therefore, it does define what must result from the "supplying" limitation. *See Griffin v. Bertina*, 285 F.3d 1029, 1033 (Fed. Cir. 2002) ("Furthermore, the Board did not err in giving limiting effect to the 'wherein' clauses because they relate back to and clarify what is required by the count."). Judge St. Eve agreed in the *Expedia* Litigation:

---

[6] The inclusion of the phrase "of an item of interest" is redundant because this description is supplied by other claim language. *See, e.g.*, '622 Patent 14: 61-62 ("for each of the items of interest, a geographical position"). The court has therefore omitted it.

> The plain language of the "wherein" clause—"wherein a user at the port may locate the one item of interest"—is permissive. Therefore, this clause merely indicates that the claimed method must provide the capability for a user at a port to locate the one item of interest. This clause does not provide an additional step that an accused infringer must itself perform in order to directly infringe this claim. . . . Accordingly, based on the plain language of the claim, and the Federal Circuit's reasoning in *Griffin*, the Court finds that the "wherein" clause of claim 14 of the '291 patent only requires that the claimed method must provide the capability for a user at a port to locate the one item of interest.

(Dkt. No. 169, Ex. 3.) Moreover, given the technical construction of the "wherein" clause, the court believes it would be useful to construe the clause for the jury to clarify its meaning.

At the same time, it is inappropriate to interpret the "wherein" clause to require the supplying of a "specific location." As the court has explained, a "geographic position" is defined as a "specific location." Claim 14 of the '291 Patent does not require that the database information communicated to the user include "geographic position," however, but instead only "spatial detail defining a geographic position." '291 Patent 16:4. Moreover, a user does not always need a "specific location," such as an address, to find an item of interest. For example, one could find the United States Courthouse in Chicago with only spatial detail—such as "three blocks west of the Art Institute and one block north of the Harold Washington Library"—even without the "specific location"—219 S. Dearborn, or "the corner of Jackson and Dearborn." The "wherein" clause requires only that the user be able to locate the item of interest, not that the user have the "specific location."

The court therefore construes the phrase "wherein a user at the port may locate the one item of interest" to mean "so that a user at the port has sufficient information to locate an item of interest."

I.       "[S]patial detail"

CoStar/LoopNet contend that "spatial detail" means "a two- or three-dimensional

27

representation," while CIVIX contends that it means "geographic information relating to an area or region."

The court finds CoStar/LoopNet's definition inappropriate because it calls for a graphical display of some kind, while the specification makes plain that "spatial detail" can include textual descriptions. The specification states that:

> Preferably, the geographic vicinity includes certain spatial detail of the items of interest. For example, the geographic vicinity can include a map of the items of interest in the selected category, as well as street and landmark information displayed relative to the user's position at the remote port.

'622 Patent 2:45-49. Thus, spatial detail includes graphical displays like maps, but it also must be defined broadly enough to include "street and landmark information," such as, for example, "three blocks west of Buckingham Fountain on Congress Ave." The prosecution history confirms this interpretation: "Spatial detail may include mapping, pictures, videos and *text-based descriptions* that locate or find a geographic position, in reference to information such as landmarks and street information (i.e. providing information for finding items of interest with respect to their surroundings)." (Dkt. No. 158, Ex. 9, at 622RE1-1060 (emphasis added).). Defining "spatial detail" as a "two- or three- dimensional representation" inappropriately excludes the text-based descriptions.[7]

Judge St. Eve also previously rejected a similar argument defining "spatial detail" with the phrase "two- or three- dimensional" in the *Expedia* Litigation, and construed "spatial detail" consistent with CIVIX's definition. (Dkt. No. 159, at 7-12.) This court endorses her reasoning in

---

[7] CoStar and LoopNet contend that the text-based descriptions are also "two- or three-dimensional in nature as they describe where the item of interest is in space relative to other things." (Dkt. No. 159, at 23.) That argument does not comport with CoStar and LoopNet's proposed definition, however. The proposed definition does not speak of a "*representation of* a two- or three-dimensional thing." Instead, in the proposed definition the *representation itself* is "two- or three-dimensional," and thus cannot include text-based descriptions.

full. Moreover, the court finds that CIVIX's proposed definition—"geographic information relating to an area or region"—is appropriate not only because of Judge St. Eve's reasoning, but also because that definition was explicitly embraced by the patentee in the subsequent prosecution history on reexamination. (Dkt. No. 158, Ex. 9, at 622RE1-1060 ("Since spatial detail is construed as *geographical information relating to a region or area* . . . ." (emphasis added)).)

CoStar/LoopNet object that construing spatial detail so broadly would inappropriately include information such as an "address," contradicting the patent's plain distinction between spatial detail and a geographic position. *See* '291 Patent 14:63-64 (reciting "spatial detail defining a geographic position"). The prosecution history of the reexamination explains, however, that "spatial detail provides geographic information, *which may include* data relating to the geographic locations (e.g., addresses or positions)" and that "spatial detail is not *a mere* location/address, but requires sufficient information in relationship to the location address that reasonably defines the location/address with respect to a geographic vicinity." (Dkt. No. 158, Ex. 11, at 291RE1-1171 (emphasis added).) In other words, "spatial detail" differs from geographic position in that it is not merely an address. As stated at oral argument, CoStar/LoopNet agree that nothing prevents "spatial detail" from including addresses, along with other information as well.

Accordingly, the court construes "spatial detail" to mean "geographical information relating to a region or area."

J.      "Internet"

CoStar/LoopNet contend that the term "Internet" means "a group of networks connected by means of a common communications protocol." CIVIX, in contrast, contends that the "Internet" is "a system of linked computer networks, world-wide in scope that typically is

associated with using TCP/IP as a standard protocol." Judge St. Eve previously construed the term "Internet" consistent with CIVIX's proposed definition in both the *Hotels.com* and *Expedia* Litigations. (Dkt. No. 159, Ex. B, at 12-17; Dkt. No. 159, Ex. C, at 18-31.)

The parties' dispute here turns on the significance of a declaration CIVIX filed during reexamination to "swear behind" the "Hershey Reference," U.S. Patent No. 5,481,535. (*See* Dkt. No. 158, Ex. 9, at 622RE1-1685 thru 92; Dkt. No. 158, Ex. 11, at 291RE1-1508 thru 15; *see also* Dkt. No. 158, Ex. 9, at 622RE1-1002 (rejecting the "Internet" claims based on the Hershey reference"); Dkt. No. 158, Ex. 11, at 291 RE1-1085 thru 87 (same).) The parties agree that the Hershey Reference disclosed the Internet as a group of networks connected by means of a common protocol, but did not disclose a global network or the use of TCP/IP. CoStar/LoopNet contend that, by swearing behind the Hershey Reference to obtain an earlier priority date, rather than attempting to distinguish the Hershey Reference, CIVIX acknowledged that its invention was anticipated by the Hershey Reference. CoStar/LoopNet thus argue that CIVIX acknowledged that the term Internet in the patents-in-suit had the same scope as it does in the Hershey Reference, and that CIVIX disclaimed any other definition. CoStar/LoopNet also contend that their argument is bolstered by the examiner's statement that "the reference Hershey [US 5,481,535 A] in the record is teaching the claimed subject matter 'Internet,' despite the patentee's efforts to distinguish the invention from the Hershey Reference. (Dkt. No. 158, Ex. 11, at 291RE1-1561.)

Judge St. Eve already rejected this argument in the *Hotels.com* Litigation and this court finds her reasoning highly persuasive. Judge St. Eve first cited the Federal Circuit's rule that any prosecution disclaimer must be "both so clear as to show reasonable clarity and deliberateness . . . and so unmistakable as to be unambiguous evidence of disclaimer." *Omega*

*Eng'g v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003). She then rejected the argument for

prosecution disclaimer in this case with reasoning that the court adopts verbatim:

> The act of swearing behind a reference does not necessarily amount to an unambiguous concession that that reference anticipates the invention. A patent applicant may have a variety of reasons for wishing to avail of the swear-behind option. Indeed, swearing behind a cited reference may limit the degree of prosecution-history estoppel and thus have strategic advantages. *See* Dennis D. Crouch, *Is Novelty Obsolete? Chronicling the Irrelevance of the Invention Date in U.S. Patent Law*, 16 MICH. TELECOMM. & TECH. L. REV. 53, 96-97 (2009).

> The Court therefore concludes that the mere act of filing a swear-behind declaration for the purpose of establishing priority falls short of the "unmistakable" character required of a communication that establishes prosecution disclaimer. In reaching this conclusion, the Court declines to rely on Civix's argument that the filing of a terminal disclaimer does not amount to prosecution disclaimer. Defendants do not point to the filing of such a disclaimer, but rather to a swear-behind declaration.

(Dkt. No. 159, Ex. C, at 27.)

The parties advance no other arguments regarding the construction of the term "Internet."

Accordingly, the court by adopting the reasoning of Judge St. Eve. in the *Hotels.com* Litigation

(*id.* at 18-31) construes "Internet" to mean "a system of linked computer networks, world-wide in

scope that typically is associated with using TCP/IP as a standard protocol."

<u>CONCLUSION</u>

For the reasons explained above, the court has determined that the following claim

constructions are the law of these consolidated cases:

- "the request containing (a) at least one user-selected category and (b) a user-selected geographic vicinity" is construed to mean "the request containing, in a single electronic representation, (a) at least one user-selected category and (b) a user-selected geographic vicinity";

- "advertising information about a business" is construed to mean "paid promotion of a business name, service, or product";

31

- "advertisements" is construed to mean "paid promotions";

- "database" is construed to mean "a collection of related information organized for convenient access";

- "geographical/geographic position" is construed to mean "a specific location within a geographic vicinity";

- "wherein a user at the port may locate the one item of interest" is construed to mean "so that a user at the port has sufficient information to locate an item of interest";

- "spatial detail" is construed to mean "geographical information relating to a region or area"; and

- "Internet" is construed to mean "a system of linked computer networks, world-wide in scope that typically is associated with using TCP/IP as a standard protocol."

In addition, the court will instruct the jury that claim 18 of the '622 Patent "requires that the portion of information transmitted to the user must include both the geographic position of the item of interest and additional detail about the item of interest in the same transmission."

Finally, the court declines for the reasons stated to construe the following phrases:

- "at a database, receiving at least in part through the Internet, a request from one of a plurality of ports"; and

- "determining, at the database, a plurality of advertisements in response to the request . . . from the database, transmitting, at least in part through the Internet, the response to the port."

A status hearing is set for 10/10/13 at 9:00 am. The court requests that the parties file, by 10/7/13, a Form 52 setting forth their proposals for setting further dates to resolve the case.

ENTER:

_James F. Holderman_
_____
JAMES F. HOLDERMAN
District Judge, United States District Court

Date: September 23, 2013