# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| COSTAR REALTY INFORMATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> CIVIX-DDI, LLC, <br><br> Defendant. | Case No. 1:12-cv-04968 (Lead Case) <br> Judge James F. Holderman |
| CIVIX-DDI, LLC, <br><br> Plaintiff, <br><br> v. <br><br> LOOPNET, INC., <br><br> Defendant. | Consolidated for pretrial purposes with: <br> Case No. 1:12-cv-07091 <br> Case No. 1:12-cv-08632 <br><br> **JURY TRIAL DEMANDED** |

## COSTAR'S AND LOOPNET'S MEMORANDUM IN SUPPORT OF THEIR _DAUBERT_ MOTION TO EXCLUDE THE TESTIMONY OF FRANCES McCLOSKEY

## REDACTED - PUBLIC VERSION

# TABLE OF CONTENTS

I.  INTRODUCTION..............................................................................................1

II.  BACKGROUND. .............................................................................................1

III.  THE *DAUBERT* STANDARD. ......................................................................4

IV.  MS. McCLOSKEY USED THE WRONG HYPOTHETICAL
NEGOTIATION DATE. ...................................................................................5

    A.  Ms. McCloskey Used Only 2011 Data To Calculate Damages..............6

    B.  Ms. McCloskey Did Not Adjust For The Nine-Year Time Gap.............8

    C.  Ms. McCloskey's Reasons For Relying Only On 2011 Data Fail..........8

V.  MS. McCLOSKEY'S COSTAR DAMAGES OPINION VIOLATES THE
ENTIRE MARKET VALUE RULE. ..............................................................10

    A.  Ms. McCloskey Uses The Entire Value Of CoStar's Products As The
Royalty Base Despite No Evidence That The Patented Feature Is The
Basis For Demand..................................................................................11

    B.  Ms. McCloskey Misunderstands The Entire Market Value Rule. .........13

VI.  MS. McCLOSKEY'S LOOPNET DAMAGES OPINION IS ARBITRARY. ...........14

VII.  CONCLUSION. ..............................................................................................16

# TABLE OF AUTHORITIES

## Cases

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012) ................................................. 7

*AVM Techs., LLC v. Intel Corp.*,
  No. 10-610-RGA, 2013 WL 126233 (D. Del. Jan. 4, 2013) ................................. 13

*Avocent Huntsville Corp. v. ClearCube Tech., Inc.*,
  No. CV-03-S-2875-NE, 2006 WL 2109503 (N.D. Ala. July 28, 2006) .................................. 10

*Cornell Univ. v. Hewlett-Packard Co.*,
  No. 01-CV-1974, 2008 WL 2222189 (N.D.N.Y. May 27, 2008) ............................................. 5

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................ passim

*Dynetix Design Solutions, Inc. v. Synopsys, Inc.*,
  No. 5:11-cv-05973, 2013 WL 4538219 (N.D. Cal., Aug. 22, 2013) ........................................ 13

*Fromson v. W. Litho Plate & Supply Co.*,
  853 F.2d 1568 (Fed. Cir. 1988) ................................................. 5

*Garretson v. Clark*,
  111 U.S. 120 (1884) ............................................................. 10, 13

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
  331 F.3d 860 (Fed. Cir. 2003) ................................................. 5, 7

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
  383 F.3d 1337 (Fed. Cir. 2004) ................................................. 5

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................. 4

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ................................................... passim

*Lewis v. Citgo Petroleum Corp.*,
  561 F.3d 698 (7th Cir. 2009) ................................................... 4

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ............................................ 5, 10, 11, 13

*Micro Chem., Inc. v. Lextron, Inc.*,
  317 F.3d 1387 (Fed. Cir. 2003) ................................................. 4

*Network Protection Scis., LLC v. Fortinet, Inc.*,
  No. C 12-01106 WHA, 2013 WL 5402089 (N.D. Cal. Sept. 26, 2013) .................................. 13

*Odetics, Inc. v. Storage Tech. Corp.*,
  185 F.3d 1259 (Fed. Cir. 1999) ................................................................................................ 7

*ResQNet.com, Inc. v. Lansa, Inc.*,
  549 F.3d 860 (Fed. Cir. 2010) ................................................................................................ 5

*Riles v. Shell Exploration & Prod. Co.*,
  298 F.3d 1302 (Fed. Cir. 2002) ............................................................................................. 5

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ....................................................................................... passim

*Wang Labs., Inc. v. Toshiba Corp.*,
  993 F.2d 858 (Fed. Cir. 1993) ................................................................................................ 5

# I.    INTRODUCTION.

CIVIX's damages expert, Ms. Frances McCloskey, opines that appropriate damages in this case are reasonable royalties of ███████ from CoStar and ███████ from LoopNet. Her opinions, however, violate fundamental principles governing patent damages. First, although the date of first alleged infringement was mid-2002, Ms. McCloskey calculates both parties' damages based exclusively on facts occurring a full nine years later, in 2011, which effectively results in her using the wrong hypothetical negotiation date. Second, Ms. McCloskey calculates CoStar's damages as a percentage of total revenues, in contravention of the entire market value rule. Third, she calculates LoopNet's damages based on an arbitrary metric that is belied by the very license upon which she relies. Because her opinions are based on methods that are unreliable and/or not reliably applied to the facts of the case, they must be excluded under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

# II.   BACKGROUND.

CIVIX accuses CoStar and LoopNet of infringing three patents: U.S. Patent Nos. 6,385,622; 6,415,291; and 8,296,335 ("the '622 patent;" "the '291 patent;" and "the '335 patent," respectively). The parties agree that, if the patents are found valid and infringed, the appropriate measures of damages are lump-sum reasonable royalties, determined via construction of a CoStar-CIVIX hypothetical negotiation and a LoopNet-CIVIX hypothetical negotiation. (*See* Ex. A,[1] November 25, 2013 Expert Report on Damages by Frances M. McCloskey, CPA, CFF, MBA ("McCloskey Report"), at 46-47; Ex. B, January 6, 2014 Rebuttal Expert Report of James E. Malackowski ("Malackowski Report"), at 56-57, 80). Likewise, the parties agree that

---

[1] Cites to Exhibits in this Memorandum refer to Exhibits to the Declaration of Mary Zaug in Support of CoStar's and LoopNet's *Daubert* Motion to Exclude the Testimony of Frances McCloskey, filed concurrently herewith.

CoStar/LoopNet and CIVIX would have negotiated a license to all three patents-in-suit, encompassing all accused products, at the same time. (*See* Ex. A, McCloskey Report, at 50-51; Ex. B, Malackowski Report, at 58, 80). Because CoStar and LoopNet already had accused products on the market when the '622 and '291 patents issued in May and July, 2002, respectively, the parties further agree that the correct hypothetical negotiation date is mid-2002. (*See* Ex. A, McCloskey Report, at 50; Ex. B, Malackowski Report, at 58).

As of mid-2002, CIVIX had entered into ■■■■ licenses for the patents-in-suit. (*See* Ex. A, McCloskey Report, at App. D; Ex. B, Malackowski Report, at 30-31). Specifically, those agreements granted a license to ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. (*See* Exs. C-I, M). The "going rate" for a license to the patents-in-suit in the mid-2002 time frame was, on average, about ■■■■■■ :

| Date | Licensee(s) | Amount |
| --- | --- | --- |
| ■■■■ | ■■■■ | ■■■ |
| ■■■■ | ■■■■■ | ■■■ |
| ■■■■ | ■■■■■■ | ■■■ |
| ■■■■■ | ■■■ | ■■■ |
| ■■■■ | ■■■■ | ■■■ |
| ■■■■ | ■■■ | ■■■ |
| ■■■■ | ■■■■■ | ■■■ |
| ■■■■■ | ■■■■■■■■■■■■■ | ■■■ |
| ■■■■ | ■■■■ | ■■■ |
| ■■■■■ | ■■■■■■■ | ■■■ |

(Exs. C-K).

Nevertheless, Ms. McCloskey's opinion is that CoStar should pay a royalty of ■■■ ■■■■ , and LoopNet should pay a royalty of ■■■■■■ , if they are found to infringe the patents-in-suit. (Ex. A, McCloskey Report, at 46). Ms. McCloskey calculates these royalties

based on license agreements that CIVIX executed nine years after the hypothetical negotiation, in 2011. (*See id.* at 67-72).

For LoopNet, Ms. McCloskey calculates damages as follows:



(*Id.* at 68-70). Ms. McCloskey selects the high end of the ▮▮▮▮▮ range to arrive at her conclusion that ▮▮▮▮▮ is the appropriate damages figure for LoopNet. (*Id.*; *see also* Ex. L, McCloskey Dep. Tr., at 60, 179-80).

For CoStar, Ms. McCloskey calculates damages as follows:



Ms. McCloskey selects the high end of the ████████████ range to arrive at her conclusion that ███████████ is the appropriate damages figure for CoStar.  (*Id.* at 70-72; *see also* Ex. L, McCloskey Dep. Tr., at 59, 189-90).[2]

## III.    THE *DAUBERT* STANDARD.

This Court has a gatekeeper obligation under Federal Rule of Evidence 702 to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999) (holding that the gatekeeping function applies to all expert matters subject to Fed. R. Evid. 702). A district court's decision to admit expert testimony under *Daubert* in a patent case follows the law of the regional circuit.  *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390–91 (Fed. Cir. 2003).  The burden is on the proponent of an expert to prove the admissibility of the expert's opinions.  *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

In a patent infringement case, the patentee bears the burden of proving damages.  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011).  A damages award may not rest on "speculative and unreliable evidence divorced from proof of economic harm linked to the

---

[2] Ms. McCloskey's Report suggests that she calculated damages a different way. ███████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

claimed invention." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010).

"Where . . . sound economic and factual predicates are absent from a reasonable royalty analysis, a district court must exercise its discretion to exclude the proffered testimony." *Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-1974, 2008 WL 2222189, at *2 (N.D.N.Y. May 27, 2008) (Rader, C.J., sitting by designation).

## IV.    MS. McCLOSKEY USED THE WRONG HYPOTHETICAL NEGOTIATION DATE.

According to well-settled Federal Circuit law, the date of the hypothetical negotiation for a reasonable royalty determination is the date that infringement first began.[3]  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012).  Use of the right "hypothetical negotiation date is essential for properly assessing damages" because the reasonable royalty "must relate to the time infringement occurred, and not be an after-the-fact assessment."  *Id.* (quoting *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003), and *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002)).

The law does "permit[] and often requires a court to look to events and facts that occurred [after the hypothetical negotiation] and that could not have been known to or predicted by the hypothesized negotiators," such as evidence of actual usage of the patented technology.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333-34 (Fed. Cir. 2009) (quoting *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988), overruled on other grounds by *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) (en banc)).  But, the hypothetical negotiation must remain fundamentally grounded on the date of first infringement because "the purpose of the hypothetical negotiation framework [is] to

---

[3] This rule applies even where, as here, the damages period begins at a later point due to lack of notice. *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993).

discern the value of the patented technology to the parties in the marketplace when infringement began." *LaserDynamics*, 694 F.3d at 76. That value can be determined only if primacy is given to the facts and circumstances that the parties faced when sitting across the bargaining table from one another on the hypothetical negotiation date. As the Federal Circuit explained, if the hypothetical negotiation analysis were to focus on a later date, "the damages analysis would be skewed because, as a legal construct, we seek to pin down how the prospective infringement might have been avoided via an out-of-court business solution." *Id.* at 76.

### A.   Ms. McCloskey Used Only 2011 Data To Calculate Damages.

As detailed in Section I above, Ms. McCloskey calculated LoopNet's damages based on a ███████████████████████ from CIVIX's licenses with █████████████. She calculated CoStar's damages as █████████████████, based on CIVIX's licenses with █████████████. *All* of the inputs to those calculations are from 2011 or later:

- ████████████████████████████████████████
- ████████████████████████████████████
- █████████████████████████████
- ███████████████████████
- ████████████████████████████████████

*See* Sec. I. Ms. McCloskey does not use a single data point from 2002 in arriving at her damages numbers. In effect, she used a hypothetical negotiation date of 2011.

Although consideration of post-hypothetical negotiation date facts is, under some circumstances, permissible, Ms. McCloskey goes too far because she shuns *all* data from the time frame of the hypothetical negotiation. Her hypothetical negotiation looks ***exactly the same***

as it would if the parties sat down at the bargaining table in 2011.[4]  This is classic "after-the-fact assessment" that lacks any grounding in the hypothetical negotiation date mandated by Federal Circuit law.  *See LaserDynamics*, 694 F.3d at 75.

Indeed, the Federal Circuit has found reliance on post-hypothetical negotiation information–like the licenses that form the entire basis for Ms. McCloskey's opinions–improper when such information reflects changed circumstances versus the date that infringement began.  *See id.* at 77-78 ("Additionally, in light of the changing technological and financial landscape in the market for ODDs, the BenQ settlement, entered into a full three years after the hypothetical negotiation date, is in many ways not relevant to the hypothetical negotiation analysis."); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1332 (Fed. Cir. 2012) ("The Cablevision agreement post-dated the hypothetical negotiation by four years and the district court thus had a legitimate reason to exclude it."); *Integra Lifesciences*, 331 F.3d at 870-71 (rejecting damages based on a 1995 expectation of FDA drug approval because there was no such expectation as of a 1994 hypothetical negotiation date: "an earlier date will change the risks and expectations of the parties"); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276-77 (Fed. Cir. 1999) (affirming the District Court's finding that license agreements executed four and five years after the hypothetical negotiation were "much, much, too late" in view of the changing technology and financial landscape).  Mr. Malackowski explained that, between 2002 and 2011, there were significant changes in the Internet-based search market, as well as in the financial condition of CoStar and LoopNet.  (Ex. B, Malackowski Report, at 36-41).  In her deposition,

---

[4] During her deposition, Ms. McCloskey could not identify any way in which her analysis would change if the hypothetical negotiation date was 2011 instead of 2002.  (Ex. L, McCloskey Dep. Tr., at 169-70, 172-73).

Ms. McCloskey testified that she did not disagree with the facts set forth in those sections of Mr. Malackowski's Report. (Ex. L, McCloskey Dep. Tr., at 212).

**B.  Ms. McCloskey Did Not Adjust For The Nine-Year Time Gap.**

In her Report, Ms. McCloskey discusses a number of facts from 2002, and in her deposition, she testified that she attempted to "time adjust" for the period between 2002 and 2011. (*See, e.g.,* Ex. A, McCloskey Report, at 4, 9, 20, 36, 60-63; *see also* Ex. L, McCloskey Dep. Tr., at 157). But none of the 2002 facts in her Report affects her damages calculation in any way. (*See* Ex. A, McCloskey Report, at 67-72). Further, the three time gap "adjustments" that she identified amount to nothing.

*First*, Ms. McCloskey testified that she 

 (Ex. L, McCloskey Dep. Tr., at 158). When pressed, however, Ms. McCloskey admitted that such an "adjustment" merely reflects the damages period; it does not adjust for the differences between 2002 and 2011 at all. (*Id.* at 158-59). *Second*, Ms. McCloskey testified that she

(*Id.* at 158; *see also id.* at 15-18). Again, she made no actual adjustment to account for the 2002 hypothetical negotiation date. *Third*, Ms. McCloskey testified that she also

(*Id.* at 159). But again, in response to follow up questions, she admitted that such consideration does not, in fact, adjust for any differences between 2002 and 2011. (*Id.* at 160).

**C.  Ms. McCloskey's Reasons For Relying Only On 2011 Data Fail.**

In her Report and during her deposition, Ms. McCloskey tried to justify her reliance on 2011 data to the exclusion of 2002 data. (*See* Ex. A., McCloskey Report, at 40-42; Ex. L,

McCloskey Dep. Tr., at 146-57).  Even if Federal Circuit law allowed calculation of a reasonable royalty based exclusively on facts occurring nine years after the hypothetical negotiation, Ms. McCloskey's justifications conflict with the facts of record.

Ms. McCloskey contends that, ███████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████████[5] (*See* Ex. L, McCloskey Dep. Tr., at 146-51, 156-57; Ex. A., McCloskey Report, at 40-42).  But, it is undisputed that the pre-2002 licenses granted rights in the patents-in-suit because they are continuations from the '525 patent.  (*See* Exs. M, C-I).  Moreover, Ms. McCloskey ████████████████████████ ████████████████████████████████████████████████████████████████ █████████ (*See* Ex. L, McCloskey Dep. Tr., at 148-51).  Indeed, at least licensees Mapquest and AOL had Internet-based products that pre-dated, and were thus covered by, their licenses.  (*See id.* at 150-51; Exs. C & E).

Ms. McCloskey also relies on the fact that the 2011 licensees are ████████████ █████████ (*See* Ex. L, McCloskey Dep. Tr., at 156-57; Ex. A., McCloskey Report, at 40-42).  But Mr. Semple, CIVIX's Managing Director, testified that ██████████████████████████ █████████ (Ex. N, Semple 5/23/07 Dep. Tr., p. 518, 531; *see also* Ex. L, McCloskey Dep. Tr., at 160-63).

The bottom line is that Ms. McCloskey uses a hypothetical negotiation date of 2011, not 2002.  There is ***nothing*** about Ms. McCloskey's damages calculation that reflects 2002.  Because

---

[5] In her Report, Ms. McCloskey states that █████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████

her opinions are based on a legally flawed predicate, they are unreliable and must be excluded under *Daubert*. *See Avocent Huntsville Corp. v. ClearCube Tech., Inc.*, No. CV-03-S-2875-NE, 2006 WL 2109503, at *22 (N.D. Ala. July 28, 2006) (Excluding a damages expert's testimony: "[h]e considered the parties' financial results, as well as market conditions, in 1998, 1999, 2000, and early 2001, but he placed just as much, if not far greater emphasis, on post-infringement financial figures through the end of 2003. In doing so, Ratliff essentially eviscerated the Federal Circuit's rule that hypothetical negotiations must be deemed to occur at the time of first infringement. This court cannot conclude . . . that he actually *focused* his analysis on the positions of the hypothetical negotiators during the November 2000 to February 2001 timeframe." (emphasis in original)).

## V.     MS. McCLOSKEY'S COSTAR DAMAGES OPINION VIOLATES THE ENTIRE MARKET VALUE RULE.

More than a century ago, the Supreme Court pronounced what we now refer to as the entire market value rule. In *Garretson v. Clark*, the Court held that, when a patent covers only a portion of the accused product, the patentee must either: (i) show that the entire value of the accused product is attributable to the patented feature; or (ii) apportion damages between the patented features and the unpatented features. 111 U.S. 120, 121 (1884). The Federal Circuit holds fast to that principle: "[t]he entire market value rule allows a patentee to assess damages based on the entire market value of the accused product only where the patented feature creates the 'basis for customer demand' or 'substantially create[s] the value of the component parts.'" *Uniloc*, 632 F.3d at 1318 (quoting *Lucent Techs.*, 580 F.3d at 1336). Otherwise, a royalty based on the value of the entire product "carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." *LaserDynamics*, 694 F.3d at 67.

**A.**   **Ms. McCloskey Uses The Entire Value Of CoStar's Products As The Royalty Base Despite No Evidence That The Patented Feature Is The Basis For Demand.**

The analysis of whether Ms. McCloskey violates the entire market value rule in this case is relatively straightforward.  She uses ███████████ as the royalty base in calculating CoStar's damages.  (Ex. A, McCloskey Report, at 72; Ex. L, McCloskey Dep. Tr., at 189-90; *see also* Sec. I).   However, the accused products that generate ███████[6] comprise both accused and substantial non-accused features and functionality.   Ms. McCloskey does not contend that the accused searches form the basis for customer demand, nor does she apportion revenues between accused searches and non-accused features.

Like the software programs at issue in *Uniloc* and *Lucent*, CoStar's accused products are multi-faceted well beyond the particular features that CIVIX accuses of infringement:



(*See* Ex. O, Semple CoStar Infringement Expert Report, at 41; Ex. P, CoStar Suite Brochure).

Ms. McCloskey proffers no evidence that the accused searches, as opposed to non-accused (map-

---

[6] For the sake of simplicity, for purposes of this motion only, CoStar sets aside the fact that its ███████████████ from sources other than the accused products.

based) searches and/or non-search features are "the basis for customer demand" for the accused products. To the contrary, demand for the accused products is driven by the breadth and quality of verified commercial real estate information, not by any particular type of search deployed at the user interface. (*See* Ex. P, CoStar Suite Brochure). Nearly half the company's 2000+ employees are professional researchers, whose job it is to continually provide CoStar's customers with accurate and timely data. (*See id.*). Indeed, Ms. McCloskey █████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████ (Ex. A, McCloskey Report, at 35; *see also id.* at 30-35). In her deposition, Ms. McCloskey also acknowledged that ██████████████████████████████████████████

████████████████████████████ (Ex. L, McCloskey Dep. Tr., at 229-30).

In her Report, Ms. McCloskey discusses ████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████ (*See* Ex. A, McCloskey Report, at 23-28, 54-57, 59; Ex. L, McCloskey Dep. Tr., at 229-30). But, she stopped far short of even suggesting that non-map searches are **the basis** for customer demand.[7] Federal Circuit precedent requires much more to trigger a patentee's right to use the entire accused product as the royalty base under the entire market value rule. *See, e.g.*, *LaserDynamics*, 694 F.3d at 68 ("It is not enough to merely show that the [patented feature] is viewed as valuable, important, or even essential to the use of the [product as a whole]."); *see also AVM Techs., LLC v. Intel Corp.*, No. 10-610-RGA, 2013 WL

---

[7] In her Report, Ms. McCloskey relies on ████████████████████████████████████
██████████████████████████████████████████████████████████████████████
████████████████████████████

126233, at *3 (D. Del. Jan. 4, 2013) ("Assuming for the sake of argument that dynamic logic circuits are the single most important part of Intel's microprocessors, it is still a long haul to conclude that they 'drive demand' for the entire microprocessor.").

Therefore, Ms. McCloskey was under a duty to apportion ██████████████ between the accused (non-map searches) features and non-accused features. Having failed to do so, her CoStar damages opinion is unreliable under *Daubert* and must be excluded. *See, e.g.*, *Lucent*, 580 F.3d at 1334 ("The damages award can't be supported by evidence that the infringers also used additional, non-infringing features."); *Uniloc*, 632 F.3d at 1318 (explaining that, if the patentee cannot satisfy the entire market value rule, it "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features") (quoting *Garretson*, 111 U.S. at 121); *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. 5:11-cv-05973, 2013 WL 4538210, at * 4 (N.D. Cal., Aug. 22, 2013) (excluding damages expert's opinions because he failed to apportion revenues between patented and non-patented features); *Network Protection Scis., LLC v. Fortinet, Inc.*, No. C 12-01106 WHA, 2013 WL 5402089, at *8 (N.D. Cal. Sept. 26, 2013).

### B. Ms. McCloskey Misunderstands The Entire Market Value Rule.

During her deposition, Ms. McCloskey protested that her CoStar damages calculation does not violate the entire market value rule. (*See* Ex. L, McCloskey Dep. Tr., at 40-50, 58-60, 190-95). Her explanations, though, reveal only that she does not truly understand the doctrine. First, she suggested that, ████████████████████████████████████████ ████████████████████████ (*Id.* at 191). But, the case law makes clear that the entire market value rule applies to damages calculated as a ███████████████ as well. *See, e.g.*, *Uniloc*, 632 F.3d at 1318-1321 (rejecting a percentage of revenues reasonableness check). Second, she advanced the theory that ████████████████████████████████████

13

█████████████████████████████████████████████████

██████████████ (Ex. L, McCloskey Dep. Tr., at 45-50, 58, 60). ███████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████ (*Id.*).  This rationale would eviscerate the entire market value rule,

however, making a percent of total revenues or profits acceptable in every case because, in every

case, ████████████████████████████████████ That is decidedly

not the law.

## VI.    MS. McCLOSKEY'S LOOPNET DAMAGES OPINION IS ARBITRARY.

Ms. McCloskey's damages opinion for LoopNet is also unreliable under *Daubert* and

should be excluded.  As detailed in Section I above, she calculates LoopNet's damages from

█████████████████████████████████████████████████

███████████████████████████ (*See* Ex. A, McCloskey Report, at 68-

70).  In other words, she assumes that the ████████████ royalties were based on ████████

███████████ and are applicable to LoopNet on that basis.

The █████ license, however, says explicitly that the royalty was based on ███████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████ (Ex. Q, ██████

CIVIX license, at ¶ 10).  Ms. McCloskey cherry picks the first of these–████████████████–

and ignores all of the others.  This approach conflicts with the ██████ license itself, which says

that all ████ metrics played a role in setting the royalty rate.

---



8 ██████████████████████████████████████████████████

██████████████ *See* Section V.

The problem with using one of the ███ metrics to the exclusion of the others is illustrated by the very disparate results that arise if LoopNet's damages are calculated based on each of the individual metrics.  For example, as Ms. McCloskey calculated, ████████ ████████████████████████████████████████████████████████ (Ex. A, McCloskey Report, at 68-70).  But, use of ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████[9]

Therefore, it is clearly improper to use *one* of the stated ███ metrics to the exclusion of the others in Ms. McCloskey's calculation of LoopNet's damages based on the ███ royalty amount.  Ms. McCloskey made no effort whatsoever to understand–and account for–how each of the metrics affected the final ███ royalty amount and, correspondingly, how each should affect the LoopNet royalty.  Moreover, the ███ license is entirely silent on the bases for ███ royalty amount, leaving Ms. McCloskey's ████ metric without any support at all.  In short, Ms. McCloskey's calculation of LoopNet's damages relies on a metric that is arbitrary.  Her methodology is therefore not reliably applied to the facts of the case and is inadmissible under *Daubert*.  509 U.S. at 597; *see Uniloc*, 632 F.3d at 1315 ("If the patentee fails to tie the theory to the facts of the case, the testimony must be excluded.").

---

[9] For all four numbers, the equation is: [████████████████████] divided by [████ metric] times [LoopNet metric] times [LoopNet's 3.5 year damages period].

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

## VII. CONCLUSION.

For the foregoing reasons, CoStar's and LoopNet's *Daubert* Motion to Exclude the Testimony of Frances McCloskey should be granted.

DATED: March 24, 2014

Respectfully submitted,

*/s/ Craig D. Leavell*

David C. Van Dyke
Joseph W. Barber
Emily E. Bennett
HOWARD & HOWARD ATTORNEYS PLLC
200 S. Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 456-3641
Facsimile: (312) 939-5617
Email: dvd@h2law.com
jwbarber@howardandhoward.com
ebennett@howardandhoward.com

Craig D. Leavell
Mary E. Zaug
Mishele Kieffer
Jason Fitterer
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: craig.leavell@kirkland.com
mary.zaug@kirkland.com
mishele.kieffer@kirkland.com
jason.fitterer@kirkland.com

Atif Khawaja (*Pro Hac Vice*)
Robert A. Gretch (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:   atif.khawaja@kirkland.com
            robert.gretch@kirkland.com

*Attorneys for*
*CoStar Realty Information, Inc. & LoopNet, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2014, a true and correct copy of the foregoing document was served upon counsel of record via the Court's CM/ECF procedures.

Respectfully submitted,

*/s/ Craig D. Leavell*

Craig D. Leavell

*Attorney for*
*CoStar Realty Information, Inc. & LoopNet, Inc.*