IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COSTAR REALTY INFORMATION, INC.,<br>        Plaintiff,<br>   v.<br>CIVIX-DDI, LLC<br>        Defendant<br><br>CIVIX-DDI, LLC,<br>        Plaintiff,<br>   v.<br>LOOPNET, INC.,<br>        Defendant | Case No.: 1:12-cv-4968<br><br>Consolidated with Case Nos.:<br>1:12-cv-7091 and<br>1:12-cv-8632<br><br>Honorable James F. Holderman<br>Magistrate Judge Daniel Martin |

**REDACTED VERSION**

**CIVIX'S MEMORANDUM IN OPPOSITION TO
COSTAR AND LOOPNET'S *DAUBERT* MOTION TO
EXCLUDE THE TESTIMONY OF FRANCES MCCLOSKEY**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COSTAR REALTY INFORMATION, INC., <br> Plaintiff, <br> v. <br> CIVIX-DDI, LLC <br> Defendant | Case No.: 1:12-cv-4968 <br><br> Consolidated with Case Nos.: <br> 1:12-cv-7091 and <br> 1:12-cv-8632 |
| CIVIX-DDI, LLC, <br> Plaintiff, <br> v. <br> LOOPNET, INC., <br> Defendant | Honorable James F. Holderman <br> Magistrate Judge Daniel Martin |

**CIVIX'S MEMORANDUM IN OPPOSITION TO COSTAR'S AND LOOPNET'S
DAUBERT MOTION TO EXCLUDE THE TESTIMONY OF FRANCES MCCLOSKEY**

I.  INTRODUCTION

In its most recent filing with the Securities Exchange Commission – signed by CEO Andrew Florence – CoStar was much more candid about Ms. McCloskey's opinions than it is in its motion. There, CoStar represented that "necessary adjustments" to Ms. McCloskey's opinion would result in damages of $3.7 million:

> [A]pplying certain necessary adjustments to CIVIX's calculation as outlined in our expert report resulted in a significant reduction in CIVIX's calculation of damage to approximately $3.7 million.... [B]ased on our adjusted calculation of CIVIX's alleged damages, the matter could result in a loss of up to $3.1 million in excess of the amount accrued [$600,000].

(Exhibit A, CoStar's December 31, 2013 Form 10-K at 47). While CIVIX disagrees that any "adjustments" to Ms. McCloskey's opinions are necessary, what CoStar believes to be "necessary adjustments" is a matter for cross examination, not exclusion. As the Federal Circuit recently explained in Apple, Inc. v. Motorola, Inc., 2014 U.S. App. LEXIS 7757 at *57 (Fed. Cir. April 25, 2014): "[E]stimating a 'reasonable royalty' is not an exact science. As such, the record may support

a range of 'reasonable' royalties, rather than a single value. Likewise, there may be more than one reliable method for estimating a reasonable royalty."

CoStar's argument for exclusion principally rests on an aggressive mischaracterization of Ms. McCloskey's opinions and testimony. For example, CoStar's lead argument is "Ms. McCloskey Used the Wrong Hypothetical Negotiation Date". (CoStar Br. at 5). That sounds like an egregious and fundamental flaw in methodology. However, both experts -- Ms. McCloskey and Mr. Malackowski -- used the same 2002 hypothetical negotiation date. They diverged on a basic issue: Ms. McCloskey's opinion is informed by post-2002 events, while Mr. Malackowski ignored anything occurring post-2002. On these facts, Ms. McCloskey's use of the "Book of Wisdom" is justified:

- There were no licenses of the '622 and '291 patents-in-suit pre-dating the 2002 hypothetical negotiation.
- After the hypothetical negotiation date, the very claims of the '622 and '291 patents asserted in this case survived lengthy reexaminations.
- After the hypothetical negotiation date, the '622 and '291 patents have been licensed in the same industry.

In stark contrast, Mr. Malackowski turned a blind eye to all post-2002 events. The centerpiece of Mr. Malackowski's analysis is his reliance on seven 1999 CIVIX licenses of two patents which are not in suit in this case (the '525 and '170 patents). Mr. Malackowski essentially ignored post-2002 events, including the actual licenses of the '622 and '291 patents, and, more importantly, the fact that the very claims of those patents asserted in this case survived reexamination (a fact nowhere mentioned in his 82-page report). Mr. Malackowski's strategy is at odds with common sense, his own methodology in other cases and Federal Circuit case law.

In its motion, CoStar juxtaposes Ms. McCloskey's opinions against the report of Mr. Malackowski, attached as Exhibit B to CoStar's motion. On this and the other issues, such a comparison confirms that Ms. McCloskey's methodology was both reliable and reasonable.

## II. ARGUMENT

### A. Ms. McCloskey's Employment of the Book of Wisdom Was Appropriate

As addressed above, the notion that Ms. McCloskey used the wrong date for the hypothetical negotiation is demonstrably inaccurate:

> Q. And you based your opinions for both CoStar and LoopNet on a hypothetical negotiation date of mid-2002, right?
>
> A. Right.

(Ex. B, McCloskey Dep. at 15).

Among other facts to which Ms. McCloskey pointed in her report are the following:

- The '622 patent and the '291 patent emerged from reexamination in September of 2009. In addition, the PTO rejected additional third party requests for reexamination of those two patents in May of 2011. (Ex. C, McCloskey Report at 6-7).

- [REDACTED]

- Each of those agreements only includes the patents and claims asserted in this litigation. (Ex. C at 53).

- CIVIX's May 18, 2011 license with the National Association of Realtors ("NAR") defines the "Real Estate Industry" and specifically excludes CoStar and Loopnet from the licenses. (Ex. C at 43).

Ms. McCloskey also stated:

A proven valid and infringed patent has more economic value than an untested patent. In other words, an "arm's length royalty" is different than an infringer's royalty as a result of the "degree of uncertainty concerning the probability that the patent in question is valid and infringed" and that "royalties agreed to as the result of actual licensing negotiations are generally discounted" for this uncertainty.

(Ex. C at 3).

Ms. McCloskey gave primary consideration to the licenses which licensed only the asserted patents and claims in this case. Accordingly, those agreements exceed the "sufficiently comparable"

requirement of ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 872 (Fed. Cir. 2010), inasmuch as the licensed technology mirrors the licensed technology in this case. (Ex. C at 40).

In contrast, the centerpiece of Mr. Malackowski's analysis is his reliance on seven 1999 CIVIX licenses of two patents which are not in suit in this case (the '525 and the '170 patents). Reasoning that the date of the hypothetical negotiation was in 2002 -- when the '622 and '291 patents-in-suit issued, Mr. Malackowski essentially ignored post-2002 events, including the actual licenses of the '622 and '291 patents, and the fact that the very claims of those patents asserted in this case survived reexamination.

Mr. Malackowski's blindness to key evidence of value is stunning, and at odds with a Federal Circuit case which he cited several times in his opinion: Lucent Technologies, Inc. v. Gateway, Inc., 580 F.3d 1301 (Fed. Cir. 2009). In Lucent, Microsoft argued that actual usage of the invention was irrelevant because that evidence post-dated the time of the hypothetical negotiation. The Federal Circuit disagreed, declaring:

> But neither precedent nor economic logic requires us to ignore information about how often a patented invention has been used by infringers. Nor could they since frequency of expected use and predicted value are related. In Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 698, 53 S.Ct. 736, 77 L.Ed. 1449 (1933), the Supreme Court recognized that factual developments occurring after the date of the hypothetical negotiation can inform the damages calculation:
>
>> [A] different situation is presented if years have gone by before the evidence is offered. Experience is then available to correct uncertain prophecy. Here is a book of wisdom that courts may not neglect. We find no rule of law that sets a clasp upon its pages, and forbids us to look within.
>
> Similarly, our case law affirms the availability of post-infringement evidence as probative in certain circumstances. In Fromson v. Western Litho Plate & Supply Co., 853 F.2d 1568, 1575 (Fed.Cir.1988), overruled on other grounds by KnorrBremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337 (Fed. Cir.2004) (en banc), we observed that **the hypothetical negotiation analysis "permits and often requires a court to look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators."**

580 F.3d at 1333 (emphasis added). CIVIX respectfully submits that this case falls into the category which "often requires a court to look to events and facts that occurred thereafter...." Id.

Mr. Malackowski's avoidance of the Book of Wisdom also does not comport with his normal practice:



(Ex. D, Malackowski Dep at 26-27; emphasis added). According to Mr. Malackowski, the issue turns on whether something is "known or knowable" at the time of the hypothetical negotiation:



(Ex. D, Malackowski Dep. at 27; emphasis added). Mr. Malackowski, however, could not say whether it was "known or knowable" in 1999 (the year of the only licenses which he deemed "most relevant") that the patents in suit (which had not even issued) would survive re-examination:





(Ex. D, Malackowski Dep at 28-29).

Mr. Malackowski's refusal to consider anything outside of the "known or knowable" at the date of the hypothetical negotiation also runs afoul of ResQNet, where the Federal Circuit expressly encouraged the district court to consider such facts on remand: "At that time, the district court may also consider the panoply of *'events and circumstances that could not have been known or predicted* by the hypothesized negotiators.'" 594 F.3d at 872; emphasis added. Outside of his opinions in this case, Mr. Malackowski also has agreed with Ms. McCloskey's opinion that a patentee is entitled to a higher royalty rate if the patent was actually deemed valid and infringed. For example, Mr. Malackowski has admitted that the key factor in determining risk of a patent litigation is "the likelihood that the identified patents would withstand an invalidity challenge." Indeed, Mr. Malackowski made that very representation to the USPTO in his own patent. (Ex. E, Patent No. 8,355,932, "System and Method for Managing Intellectual Property Based Risks" at Col. 7, lns. 50-51). To quote Mr. Malackowski in another case: "I have concluded that CEATS would have in fact negotiated significantly higher royalty rates if the patents were deemed valid and infringed." CEATS, Inc. v. Continental Airlines, Inc., Case No. 6:10 cv. 120 (E.D. Tex. March 1, 2012), Doc. No. 926 at 4. (Ex. F). As Mr. Malackowski testified:





(Ex. D, Malackowski Dep. at 18-19).

CoStar's authorities in no way prohibit Ms. McCloskey's use of the Book of Wisdom on this record. For example, in LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 77 (Fed. Cir. 2012), the Federal Circuit pointed out that license agreements in settlement of litigation may be tainted:

> The notion that license fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty is a logical extension of Georgia-Pacific, the premise of which assumes a voluntary agreement will be reached between a willing licensor and a willing licensee, with validity and infringement of the patent not being disputed. See 318 F. Supp. at 1120.

In that case, out of 29 licenses, the expert selected as the most relevant license a litigation license executed under particularly coercive circumstances:

> Unlike the license in ResQNet, the BenQ settlement agreement is far from being the "most reliable license in [the] record." 594 F.3d at 872. Indeed, the BenQ settlement agreement appears to be the least reliable license by a wide margin. ***The BenQ settlement agreement was executed shortly before a trial—a trial in which BenQ would have been at a severe legal and procedural disadvantage given the numerous harsh sanctions imposed on it by the district court.*** The $6 million lump sum license fee is six times larger than the next highest amount paid for a license to the patent-in-suit, and ostensibly reflects not the value of the claimed invention but the strong desire to avoid further litigation under the circumstances.

Id. at 77-78; emphasis added.

Here, Laser Dynamics actually favors Ms. McCloskey's approach over that followed by Mr. Malackowski. The most important license on which Ms. McCloskey relies is the National Association of Realtors ("NAR") license, and CIVIX was not even in litigation with NAR. Hence,

there was no "coercive litigation" situation instead, **NAR reached out to CIVIX** to negotiate a license:

> WHEREAS, NAR contacted CIVIX regarding the possibility of acquiring the right to obtain licenses under CIVIX's patents for the Real Estate Industry (as defined below), and CIVIX responded that it is willing to grant such licenses;

(Ex. G, NAR License at p. 1). In sharp contrast, the seven 1999 licenses on which Mr. Malackowski exclusively relies all settled litigation with the licensees (Ex. H, Malackowski Report at 59-63).

In two other cases on which CoStar relies, the Federal Circuit merely determined that the exclusion of evidence was not an abuse of discretion. In Odetics, Inc. v. UStorage Technology Corp., 185 F.3d 1259, 1276-77 (Fed. Cir. 1999), the Federal Circuit determined that the district court's exclusion of later licenses was not an abuse of discretion: "While Rite-Hite does not require the exclusion of post-infringement evidence, it certainly does not require its entry." Active Video Networks, Inc. v. Verizon Communications, Inc., 694 F.3d 1312, 1332 (Fed. Cir. 2012), was another instance in which the Federal Circuit held that the district court did not abuse its discretion by excluding certain evidence. In so holding, the Federal Circuit signaled that the exclusion was not necessarily the correct call: "Although *we may not have decided those issues the same way had we presided over the trial*, the district court did not abuse its discretion." *Id.* (emphasis added).

Finally, the notion that Ms. McCloskey simply ignored the 2002 landscape is contradicted by her report and her testimony:





(Ex. B, McCloskey Dep. at 166-67).

In summary, Ms. McCloskey's use of the Book of Wisdom was particularly appropriate under Federal Circuit case law and the facts of this case. Mr. Malackowski's contrary arguments are at odds with such case law and his own practice in other cases.

### B. Ms. McCloskey Did Not Apply The Entire Market Value Rule

CoStar's argument that Ms. McCloskey applied the entire market value rule ignores the fact that she expressly opined that such rule is not applicable here:



(Ex. B, McCloskey Dep. at 40-41; emphasis added.

While CoStar argues that Ms. McCloskey employed the entire market value rule in disguise, Ms. McCloskey actually analyzed CIVIX's licensing of the real estate industry and derived benchmark lump sum royalties. Ms. McCloskey explained that the $7.5 million NAR license with several distinct exclusions, covered the entire "Real Estate Industry" defined as:

> "Real Estate Industry" shall mean NAR; existing and hereafter created state and local REALTOR® associations, commercial and residential MLSs and their existing and future participants, members and subscribers, REALTORS®, real estate agents and brokers, brokerage firms and their affiliates, franchisees and franchisors; and existing and future vendors that provide existing and subsequently developed proprietary real estate listing and searching products, software, systems and services to the foregoing (such as, but not limited to, LPS, CoreLogic and Realist, Rapattoni, FBS, RPR™, Solid Earth, Stratus, Systems Engineering and dynaCONNECTIONS and IDX and

VOW vendors). For purposes of this Agreement, ***the term "Real Estate Industry" shall not include Craigslist, Costar, LoopNet, Trulia or Zillow.*** (emphasis added.)

(Ex. C, McCloskey Report at 43). ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Id. at 58). CoStar and LoopNet – specifically excluded from the NAR license -- effectively constitute the entire commercial real estate market, valued at equal to or greater than the residential market. (Id. at 43, 58). Thereafter, she explained:



Id. at 64). She further summarized the benchmark royalty rates and allocated to them as follows:

**Benchmark Royalty Rates**

(Id. at 67). Her summary of the basis for her royalty conclusion included the following points:



(Id. at 73-75).

Turning to Mr. Malackowski's analysis, the "standard" against which (according to CoStar) Ms. McCloskey's methodology should be compared, he essentially pretends that the NAR license never occurred.



(Ex. I at 184-85; emphasis added). Hence, the experts' competing views about the importance of NAR turn on disputed underlying facts.

Finally, CoStar also contends that "Ms. McCloskey was under a duty to apportion CoStar's revenues between the accused (non-map searches) and non-accused features." ( CoStar Br. at 13).



C. The LoopNet Damages Opinion Is Not "Arbitrary"

CoStar also attacks Ms. McCloskey's opinion on the LoopNet royalty as "arbitrary", essentially arguing that ▮

(Ex. B at 223). She also explained why "page views" are not an appropriate metric for comparison:

(Ex. B at 223-24).

### D. CoStar's Arguments Are For The Jury And Do Not Warrant Exclusion

CoStar's arguments are suited for cross examination and do not merit exclusion of Ms. McCloskey's testimony. Ms. McCloskey's use of the Book of Wisdom is a good example. She focused on licenses of these very claims which were directed to licensing the entire real estate industry. On the other hand, Mr. Malackowski - -whose opinions CoStar has measured Ms. McCloskey against – narrowly focused on seven litigation licenses from 1999 – before the patents-in-suit even existed. The relative merits of those approaches may be addressed in cross examination.

The Federal Circuit's recent opinion in Apple v. Motorola is instructive:

> This court has also recognized that estimating a "reasonable royalty" is not an exact science. As such, the record may support a range of "reasonable" royalties, rather than a single value. Likewise, ***there may be more than one reliable method for estimating a reasonable royalty.*** See, e.g., In re Innovatio IP Ventures, LLC Patent Litig., MDL 2303, 2013 WL 5593609, at *30-*40 (N.D. Ill. Oct. 3, 2013) (undertaking a detailed evaluation of the different methods proposed by the parties of valuing the patents at issue). For example, a party may use the royalty rate from sufficiently comparable licenses, value the infringed features based upon comparable features in the marketplace, or estimate the value of the benefit provided by the infringed features by a comparing the accused product to non-infringing alternatives. ***All approaches have certain strengths and weaknesses and, depending upon the facts, one or all may produce admissible testimony in a single case. It is common for parties to choose different, reliable approaches in a single case and, when they do, the relative strengths and weaknesses may be exposed at trial or attacked during cross-examination.*** That one approach may better account for one aspect of a royalty estimation does not make other approaches inadmissible…. The fact that one of these methods may be said to more accurately value this aspect of a reasonable royalty calculation does not, necessarily, make the other approach inadmissible.

214 U.S. App. LEXIS 7757 at **57-58 (emphasis added). See also Sargent Mfg. Co. v. Cal-Royal Products, Inc., 2012 U.S. Dist. LEXIS 105260 at *17 (D. Con. July 27, 2012) *("the question of a reasonable royalty rate and the similarity of licensing agreements* as a basis of reference for arriving at a reasonable royalty rate, *are questions of fact.* This argument raised by Cal–Royal is therefore yet another attempt to usurp the role of the jury. At trial, the Parties will each have the opportunity to present evidence regarding a reasonable royalty rate, and to challenge the rates

proposed by the opposing party. The Court will not foreclose the jury's review of this question of fact." (emphasis added).).

CoStar itself has represented that "necessary adjustments" to McCloskey's opinion would result in damages of $3.7 million:

> [A]pplying certain necessary adjustments to CIVIX's calculation as outlined in our expert report resulted in a significant reduction in CIVIX's calculation of damage to approximately $3.7 million.... [B]ased on our adjusted calculation of CIVIX's alleged damages, the matter could result in a loss of up to $3.1 million in excess of the amount accrued [$600,000].

(Exhibit A, CoStar's December 31, 2013 Form 10-K at 47). While CIVIX disagrees that any "adjustments" to Ms. McCloskey's opinions are necessary, what CoStar believes to be "necessary adjustments" is a matter for cross examination, not exclusion.

### III. CONCLUSION

For the reasons stated above, CIVIX respectfully requests that CoStar's motion be denied.

Respectfully submitted,

*Paul K. Vickrey*
Raymond P. Niro
Paul K. Vickrey
David J. Sheikh
Olivia T. Luk
Joseph A. Culig
NIRO, HALLER & NIRO
181 W. Madison St., Suite 4600
Chicago, IL 60602
(312) 236-0733
Fax: (312) 236-3137
Email(s) : rniro@nshn.com; vickrey@nshn.com; sheikh@nshn.com; jculig@nshn.com; oluk@nshn.com

***Attorneys for Plaintiff, CIVIX-DDI, LLC***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 22, 2014 the foregoing

**CIVIX'S MEMORANDUM IN OPPOSITION TO COSTAR'S AND LOOPNET'S DAUBERT MOTION TO EXCLUDE THE TESTIMONY OF FRANCES MCCLOSKEY**

was served upon the following counsel of record via electronic transmission.

| | |
|---|---|
| David C. Van Dyke<br>Joseph Watson Barber<br>Emily E. Bennett<br>Howard & Howard Attorneys PLLC<br>200 S. Michigan Avenue, Suite 1100<br>Chicago, IL 60604<br>(312) 456-3641<br>Fax: (312) 939-5617<br>Emails: dvd@h2law.com;<br>jwbarber@howardandhoward.com;<br>ebennett@howardandhoward.com | Atif Khawaja<br>Robert A. Gretch<br>Kirkland & Ellis, LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>(212) 446-4800<br>Fax: (212)-446-4900<br>Emails: akhawaja@kirkland.com<br>robert.gretch@kirkland.com |

Craig D. Leavell
Jason Fitterer
Mary E. Zaug
Mishele Kieffer
Kirkland & Ellis, LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000
Fax: (312) 862-2200
Emails: cleavell@kirkland.com
Jason.fitterer@kirkland.com;
mzaug@kirkland.com;
mishele.kieffer@kirkland.com

*Attorneys for CoStar Realty Information, Inc. and LoopNet, Inc.*

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

                                                      *Paul K. Vickrey*
                                  Attorneys for Plaintiff, CIVIX-DDI, LLC
                                  NIRO, HALLER & NIRO