IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COSTAR REALTY INFORMATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CIVIX-DDI, LLC,<br><br>Defendant. | Case No. 1:12-cv-04968 (Lead Case)<br>Judge James F. Holderman |
| CIVIX-DDI, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LOOPNET, INC.,<br><br>Defendant. | Consolidated for pretrial purposes with:<br>Case No. 1:12-cv-07091<br>Case No. 1:12-cv-08632<br><br>**JURY TRIAL DEMANDED** |

**COSTAR'S AND LOOPNET'S REPLY MEMORANDUM IN SUPPORT OF THEIR
*DAUBERT* MOTION TO EXCLUDE THE TESTIMONY OF FRANCES McCLOSKEY**

CIVIX's brief is largely an exercise in misdirection. Many of the specific facts and arguments set forth in CoStar's and LoopNet's Opening Brief as the basis for exclusion of Ms. McCloskey's opinions stand uncontested. Instead, CIVIX devotes much of its energy to criticizing CoStar's and LoopNet's damages expert, which is entirely irrelevant to the question of whether Ms. McCloskey's methodology passes muster under *Daubert*. CIVIX also tries to focus attention on other irrelevant facts. But CIVIX does not dispute what is most important:

- ***all*** of the data that Ms. McCloskey used to calculate damages came from 2011–nine years after the agreed 2002 date of the hypothetical license negotiation;

1

- the accused searches are not the basis for customer demand for the accused CoStar products, and Ms. McCloskey did not apportion damages between accused and non-accused aspects of the products; and

- $-per-subscriber is just one of the five metrics that were the basis for Trulia's royalty payment, and Ms. McCloskey simply ignores the other four metrics in order to arrive at her inflated LoopNet royalty.

CoStar and LoopNet have established that Ms. McCloskey's opinions are unreliable under *Daubert* and must therefore be excluded.

## I. MR. MALACKOWSKI'S OPINIONS ARE NOT AT ISSUE.

CIVIX devotes approximately a third of its brief to criticizing the opinions of CoStar's and LoopNet's damages expert, James Malackowski. But CIVIX has not moved to exclude Mr. Malackowski's testimony, nor is the soundness of his methodology relevant to the resolution of CoStar's and LoopNet's motion. CIVIX tries to justify its focus on Mr. Malackowski by suggesting that CoStar and LoopNet find fault with Ms. McCloskey's opinions by "juxtaposing" her opinions against those of Mr. Malackowski. (CIVIX Br., at 2.) In reality, CoStar and LoopNet cited to Mr. Malackowski's report for only two things: (1) background facts, such as the parties' agreement that the proper metric of damages is a lump-sum reasonable royalty negotiated in mid-2002 for all patents and all products at the same time; and (2) changes in the Internet-based search market and CoStar's and LoopNet's financial condition from 2002 to 2011, which facts Ms. McCloskey testified that she did not disagree with. (Opening Br., at 1-2, 7-8.)

CIVIX would like to turn CoStar's and LoopNet's motion into a "battle of the experts" best resolved by mutual cross examination. But this tactic merely represents an attempt at distraction from the real issue, namely, the inadmissibility of Ms. McCloskey's unreliable methods under the law.

## II. COSTAR'S SEC FILING IS IRRELEVANT.

CIVIX's brief opens with yet another red herring in the form of a quote from CoStar's most recent SEC filing. (CIVIX Br., at 1, 15.) Of course, Generally Accepted Accounting Principles and the SEC rules that govern CoStar's accounting for possible loss contingencies are entirely distinct from the legal standard set forth in *Daubert*. Moreover, CIVIX conveniently omits the statement in the SEC filing that directly addresses CoStar's viewpoint on the validity of Ms. McCloskey's opinions and methodology: "We believe that Civix's calculation of damages is based on improper assumptions and miscalculations, and is otherwise unsupported." (Exh. W,[1] CoStar's December 31, 2013 Form 10-K at 47.)

## III. MS. MCCLOSKEY USED THE WRONG HYPOTHETICAL NEGOTIATION DATE IN DETERMINING COSTAR'S AND LOOPNET'S DAMAGES.

CIVIX's arguments that Ms. McCloskey used mid-2002 as the hypothetical negotiation date are without merit. First of all, CIVIX relies on the fact that Ms. McCloskey says that she used a mid-2002 negotiation date. (CIVIX Br., at 3.) CIVIX also points out that Ms. McCloskey says that she had in mind the importance of CoStar's new Internet platform in mid-2002. (*Id.* at 8-9.) Whatever Ms. McCloskey *says*, what she actually *did* was use data points from 2011 for every single input to her damages calculation.[2] (*See* Opening Br., at 2-4, 6; CIVIX Br., at 3-9.) CIVIX does not contest this fact, nor does CIVIX show that information from 2002 actually affected her damages opinion in any way.

---

[1] Exhs. A-V were submitted with CoStar's and LoopNet's Opening Brief. Exhs. W-Y are submitted with this Reply Brief.

[2] In its brief, CIVIX appears to suggest that that Ms. McCloskey used a different method to calculate CoStar's damages than that outlined in CoStar's and LoopNet's Opening Brief. (*See* CIVIX Br., at 9-11.) The falsity of this suggestion is addressed in Section IV. below. Even if Ms. McCloskey did use the residential-real-estate-market-as-a-benchmark method as her primary calculation, though, all of those data points are likewise from 2009 and 2011. (*See* Opening Br., Exh. A, McCloskey Report, at 64, 67.)

CIVIX's primary argument is a straw man, namely, that the law permits consideration of post-hypothetical negotiation events, sometimes referred to as the "Book of Wisdom." (*See* CIVIX Br., at 7-8.) This idea is correct as a general principle, as CoStar and LoopNet acknowledged in their opening brief. (*See* Opening Br., at 5.) But CIVIX ignores the more fundamental rule that an evaluation of damages must focus principally on the facts and circumstances that exist as of the hypothetical negotiation date because damages must value the technology to the parties when infringement began, rather than being an "after-the-fact assessment." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75-76 (Fed. Cir. 2012). CIVIX does not cite to a single case in which any court has permitted a damages expert to offer an opinion based *exclusively* on data that is significantly later than the hypothetical negotiation, much less a full *nine years later*.

CIVIX appears to argue that 2009 and 2011 data is "better" than 2002 data for various reasons. ***First***, CIVIX relies on the fact that two of the patents-in-suit emerged from reexamination in 2009. (CIVIX Br., at 3.) Ms. McCloskey's Report mentioned the reexaminations, but that fact played no role whatsoever in her damages analysis. Indeed, she selected the 2009 and 2011 licenses as "sufficiently comparable" because they granted rights in only the patents-in-suit and were in the real estate industry. (*See* Opening Br., Exh. A, McCloskey Report, at 40-42, 53-54.) She never identified the fact that the '622 and '291 patents had survived reexamination in 2009 as a rationale for rejecting earlier licenses as comparable. Indeed, Ms. McCloskey explained that the fact that the patents had not been found valid or infringed by a court affected the comparability of ***all*** license agreements, without making any distinction between the pre-reexamination and post-reexamination licenses. (*Id.*) Moreover, when asked in her deposition the bases for her position that CIVIX's pre-2009 license

4

agreements were not comparable, Ms. McCloskey did not identify reexamination as a factor. (Opening Br., Exh. L, McCloskey Tr., at 146-148.) Because the patents' reexamination is not actually one of the bases for Ms. McCloskey's reliance on 2011 data to the exclusion of 2002 data, it cannot form a basis for admissibility of her opinions.

*Second*, CIVIX argues that the later licenses, unlike the pre-2002 licenses, grant rights in only the patents and claims asserted in this litigation. (CIVIX Br., at 3-4.) Neither CIVIX nor Ms. McCloskey dispute that the pre-2002 licenses did grant rights in the patents-in-suit as continuations of the '525 patent. (*See* Opening Br., at 9.) Moreover, in her deposition, Ms. McCloskey rejected the notion that the pre-2002 licenses were not comparable because they granted rights in additional patents. (Opening Br., Exh. L, McCloskey Tr., at 146-148.) Instead, she relied on the idea that the '525 patent had no claims drawn to Internet searches. (*Id.*) CoStar and LoopNet addressed this point in their Opening Brief, to which CIVIX offers no response. (Opening Br., at 9; CIVIX Br., at 3-9.)

*Third*, CIVIX urges that its residential real estate licenses should play a predominant role, particularly the NAR license because it was not a settlement of litigation between the parties. (CIVIX Br., at 3, 7-8.) CIVIX simply ignores Mr. Semple's testimony that CIVIX's licenses are not industry-specific, which makes the real estate industry point irrelevant. (*See* Opening Br., at 9.) Even more surprisingly, CIVIX also ignores Ms. McCloskey's position that the NAR license should be considered a compromise to resolve the parties' dispute and, in this respect, treated the same as CIVIX's licenses that formally settled litigation. (Opening Br., Exh. A, McCloskey Report, at 41.)

Indeed, with respect to the applicability of 2011 data points, CIVIX does not dispute that courts have found later events irrelevant when the technological and financial landscape

5

changes after the hypothetical negotiation date. (*See* Opening Br., at 7-8.) Neither CIVIX nor Ms. McCloskey challenge the facts set forth in Mr. Malackowski's Report establishing exactly those types of changes between 2002 and 2011 in this case.[3] (*See id.*)

There is no dispute on two critical points: (1) Ms. McCloskey's damages opinions are based entirely on 2011 data; and (2) no case law, Book of Wisdom or otherwise, supports an approach of calculating damages using only data from nine years after the hypothetical negotiation date. Neither Ms. McCloskey nor CIVIX could identify a single way in which her analysis would change if the hypothetical negotiation date was 2011 instead of 2002. Because Ms. McCloskey effectively used the wrong hypothetical negotiation date, her opinions must be excluded.

### IV. MS. MCCLOSKEY VIOLATED THE ENTIRE MARKET VALUE RULE IN DETERMINING COSTAR'S DAMAGES.

On this issue, CIVIX again asserts that Ms. McCloskey did not violate established patent damages principles because she says she didn't. (CIVIX Br., at 9.) A review of Ms. McCloskey's complete testimony on why she did not view herself as violating the entire market value rule, however, quickly reveals the flaws in her reasoning. Ms. McCloskey explained that,

---

[3] CoStar and LoopNet vigorously contest CIVIX's criticisms of Mr. Malackowski's damages opinions. Because those criticisms are irrelevant to the present motion, CoStar and LoopNet respond only briefly here. As an initial matter, Mr. Malackowski did not ignore post-2002 events or fail to use the Book of Wisdom. (*See, e.g.,* Exh. X, Malackowski Report, at 22-32, 36-41, 65-69; *see also* Exh. Y, Malackowski Tr., at 27 ("[E]very expert in every assignment employs the book of wisdom . . . . The issue of the book of wisdom is how widely you open it . . . .").) He also explained that the patents' reexamination did not affect his analysis because his opinions already included the assumption that the patents were valid and infringed. (*See* Exh. X, Malackowski Report, at 56; Exh. Y, Malackowski Tr., at 24-25.) The testimony that CIVIX elicited on whether the patent reexaminations were "known or knowable" in 1999 is irrelevant– the question is what was "known or knowable" to the parties at the time of the hypothetical negotiation, in mid-2002. (Exh. Y, Malackowski Tr., at 27.)

6

in her view, because the CIVIX licensees' royalty payments necessarily had some relationship to their total revenues, their royalties could be applied to CoStar on a percentage-of-revenue basis:

> I did an analysis of the license agreements and determined what other parties did in terms of paying for the patented inventions in relation to their total revenue so therefore you have an analogous -- in my opinion, you have an analogous situation to what CoStar and LoopNet might have agreed to in the negotiation . . . .

(Opening Br., Exh. L, McCloskey Tr., at 44; *see also id.* at 41-50.)

> Q: Now, you said that it's -- for CoStar it was fair to look at percent of revenues because in some way the royalty that companies are willing to pay is always fundamentally based on revenues. Do I have that right?
>
> A: Yes.

(*Id.* at 60; *see also id.* at 193-194.) As CoStar and LoopNet pointed out in their opening brief, such a rationale would do away with the entire market value rule. In every case, a royalty could be calculated as a percentage of total revenues because prior licensees' royalty rates necessarily had some relationship to their total revenues. (Opening Br., at 13-14.) CIVIX had no response to this point.

CIVIX tries to sidestep its entire market value rule problem by suggesting that Ms. McCloskey did not calculate CoStar's damages as a percentage of total revenues. (CIVIX Br., at 9-11.) CIVIX argues that Ms. McCloskey's opinion is instead derived from the total royalties paid by real estate licensees. (*Id.*) Ms. McCloskey testified, however, that her comparison to the aggregate residential real estate licensee royalties was merely a reasonableness check. (Opening Br., Exh. L, McCloskey Tr., at 86-87.) She stated very clearly that she actually calculated CoStar's damages by taking a percentage of CoStar's total revenues, not by looking at how much the "Professional Focused" segment of the residential real estate market paid:

REDACTED

7

(Opening Br., Exh. L, McCloskey Tr., at 189-190; *see also id.* at 24-25, 34-35, 59; Opening Br., Exh. A, McCloskey Report, at 72; Opening Br., at 4 n.2.)

Despite CIVIX's attempted sleight of hand, there is no question that Ms. McCloskey calculated CoStar's damages as a percentage of its total revenues. Moreover, CIVIX does not dispute that CoStar derives its revenues from far more than just the accused searches, including non-search product features and non-accused search functionality. (*See* Opening Br., at 11-12.) The law is clear: a patentee may calculate damages as a percentage of total revenues only if the accused feature "creates the 'basis for customer demand' or 'substantially creates the value of the component parts.'" *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (*quoting Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009)). CIVIX does not contend that either of these conditions is met. Therefore, Ms. McCloskey was required to apportion damages between the accused features and non-accused features, but failed to do so. Accordingly, her CoStar damages opinion is in clear violation of the entire market value rule and must be excluded.[4]

CIVIX offers a final excuse that fact discovery did not provide it with a basis upon which to apportion. (CIVIX Br., at 12.) As an initial matter, the testimony that CIVIX relies on relates to apportionment among the accused CoStar Suite products (Property Professional, COMPS,

---

[4] Again, CoStar and LoopNet strongly disagree with CIVIX's attacks on Mr. Malackowski's opinions. But Mr. Malackowski's consideration of the NAR license has nothing to do with whether Ms. McCloskey violated the entire market value rule.

Tenant), not between accused and non-accused functionality. Moreover, if nothing else, CIVIX had every opportunity to conduct a survey designed to determine the value of accused searches versus other searches and features. Difficulty of apportionment does not forgive its absence. *See LaserDynamics*, 694 F.3d at 69 ("Finally, we reject the contention that practical and economic necessity compelled LaserDynamics to base its royalty on the price of an entire laptop computer."); *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F.Supp.2d 687, 690 (E.D. Tex. 2010) (Rader, J., sitting by designation) (rejecting patentee's argument that it could not apportion because defendants did not provide sufficient information).

## V. MS. MCCLOSKEY USED AN ARBITRARY METRIC IN DETERMINING LOOPNET'S DAMAGES.

CIVIX does not dispute any of the facts that form the basis for CoStar's and LoopNet's arguments to exclude Ms. McCloskey's LoopNet opinion as arbitrary, namely:

- the Trulia license states that Trulia's royalty was based on five enumerated metrics;

- Ms. McCloskey used only one of those metrics–$-per-subscriber–in applying the Trulia royalty to LoopNet to determine LoopNet's damages;

- use of the other metrics results in significantly higher and lower LoopNet damages figures than that determined by Ms. McCloskey; and

- there is no evidence at all that $-per-subscriber was a basis for the Zillow royalty.

(*See* Opening Br., at 14-15.) Ms. McCloskey's use of a $-per-subscriber metric from the Trulia and Zillow licenses to calculate LoopNet's damages is not reliable because it ignores the combination of metrics that the Trulia license explicitly identifies as the bases for the Trulia royalty.

Instead, CIVIX points out that Ms. McCloskey had an explanation for why she used her $-per-subscriber metric. (CIVIX Br., at 13.) But Ms. McCloskey gave that testimony in response to a question as to whether Trulia, Zillow, and LoopNet needed to have approximately

9

the same number of paid subscribers in order to use that metric. (Opening Br., Exh. L, McCloskey Tr., at 222-223.) Neither the question nor her answer relate at all to the appropriateness of using $-per-subscribers to the exclusion of the other metrics. (*See id.*) Moreover, the testimony cited by CIVIX involves Ms. McCloskey's defense of ***paid*** subscribers versus ***all*** subscribers (including free users), which has nothing to do with CoStar's and LoopNet's motion. (*See id.*) Even if it was relevant, her testimony does nothing to explain why $-per-subscriber is a valid metric but advertising revenue (also identified in the Trulia license as a basis for the royalty) is not, as both involve financial benefit (revenue) to the licensee.

CIVIX's only other argument is criticism of Mr. Malackowski's use of the "page views" metric, but once again, his opinions (which are sound in any event) are not at issue here. CoStar's and LoopNet's arguments for the exclusion of Ms. McCloskey's LoopNet opinion are not truly contested in any relevant way.

## VI. CIVIX'S "WEIGHT NOT ADMISSIBILITY" ARGUMENT.

Finally, CIVIX falls back on the argument that any flaws in Ms. McCloskey's opinions go to their weight, not their admissibility. (CIVIX Br., at 14-15.) CIVIX would like for this Court to view the issue as a "battle of the experts" for the jury to sort out. But the question is not the relative merits of the two experts' approaches. The question is whether Ms. McCloskey's methods, standing on their own two feet, comport with the *Daubert* standard. They do not. Using the wrong hypothetical negotiation date, violating the entire market value rule, and basing damages on an arbitrary metric are fundamental flaws in methodology that render Ms. McCloskey's opinions unreliable under Supreme Court and Federal Circuit law and therefore unsuitable for presentation to a jury. Yes, there may be multiple reliable methods for determining a reasonable royalty in some cases, but Ms. McCloskey has not chosen one of them in this case.

**VII. CONCLUSION.**

Because Ms. McCloskey's opinions are based on methods that are unreliable and/or not reliably applied to the facts of the case, CoStar and LoopNet respectfully submit that this Court should exercise its gatekeeper function under *Daubert* and exclude her testimony.

DATED: June 13, 2014

Respectfully submitted,

*/s/ Craig D. Leavell*

David C. Van Dyke
Joseph W. Barber
Emily E. Bennett
HOWARD & HOWARD ATTORNEYS PLLC
200 S. Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 456-3641
Facsimile: (312) 939-5617
Email: dvd@h2law.com
jwbarber@howardandhoward.com
ebennett@howardandhoward.com

Craig D. Leavell
Mary E. Zaug
Jason Fitterer
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: craig.leavell@kirkland.com
mary.zaug@kirkland.com
jason.fitterer@kirkland.com

Atif Khawaja (*Pro Hac Vice*)
Robert A. Gretch (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: atif.khawaja@kirkland.com
robert.gretch@kirkland.com

*Attorneys for*
*CoStar Realty Information, Inc. & LoopNet, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2014, a true and correct copy of the foregoing document was served upon counsel for CIVIX-DDI, LLC by electronic mail as follows:

| | |
|---|---|
| Ashley LaValley | alavalley@nshn.com |
| Daniel R. Ferri | dferri@nshn.com |
| David J. Sheikh | sheikh@nshn.com |
| Gabriel I. Opatken | gopatken@nshn.com |
| Joseph A. Culig | jculig@nshn.com |
| Olivia T. Luk | oluk@nshn.com |
| Paul K. Vickrey | vickrey@nshn.com |
| Raymond P. Niro | rniro@nshn.com |

Respectfully submitted,

*/s/ Craig D. Leavell*
Craig D. Leavell

*Attorney for*
*CoStar Realty Information, Inc. & LoopNet, Inc.*